## KELLUM *v*. THE STATE.

CRIMINAL LAW.—*Sale of Lottery Ticket.*— *Vincennes University Lottery.— Corporation.— Contract.— Vested Right.— Constitutional Law.*—Upon a prosecution for the alleged unlawful sale of a ticket in a certain gift enterprise and lottery scheme, the following facts were admitted :  That, by an act approved Sept. 17th, 1807, passed by the Indiana Territorial Legislature, "The Vincennes University" was instituted and incorporated within said territory, and certain named trustees and their successors created a body corporate and politic, with continuous succession ; that, by section 15 of said act, to raise money for the purpose of procuring a library and the necessary philosophical and experimental apparatus for said University, not to exceed the lawful amount, a lottery was authorized and provision made for the manner in which it should be conducted ; that, in 1879, pursuant to said section 15, a lottery scheme was organized, in the mode therein prescribed, and the ticket sold, for the sale of which said prosecution was instituted ; that no other lottery had ever been held and no other attempt made to carry out the provisions of said section ; and that no funds had ever been raised for the purpose therein named.
*Held*, that the prosecution can not be maintained.
*Held*, also, that, under the fundamental law for the government of Indiana Territory, the territorial legislature had power to incorporate said University with perpetual succession, and to endow it with the lottery privilege, for the purpose named.

*Held*, also, that the grant of such lottery privilege has never been annulled or repealed and is still in force.

*Held*, also, that the institution incorporated was a private corporation, and when the board of trustees thereof accepted the terms of the act of incorporation, and the institution was organized thereunder, the lottery privilege became a matter of contract and vested right, which could not be abridged, impaired or annulled by any government thereafter organized within said territory.

From the Knox Circuit Court.

*F. W. Viehe*, *R. G. Evans*, *A. L. Roache* and *E. H. Lamme*, for appellant.

*T. W. Woollen*, Attorney General, and *J. S. Long*, Prosecuting Attorney, for the State.

Howk, J.—Upon affidavit and information filed in the court below, the appellant was prosecuted for the unlawful sale, as alleged, of one share and ticket in a certain gift enterprise and lottery scheme for the division of personal property and money, by chance and lot. The sufficiency of the affidavit and information was not questioned, in any manner, in the circuit court, nor is it in this court. Therefore, we need not state in this opinion the substance even of either the affidavit or information. We need only say, that the appellant was therein and thereby charged with the alleged unlawful sale, on the 10th day of May, 1879, at Knox county, Indiana, of such share or ticket, to a certain named person, for a certain sum of money.

The appellant appeared in person and by counsel, and filed a special plea or answer to the information, in which plea or answer, the appellant alleged, in substance, that the Legislature of the Indiana Territory, by an act approved on the 17th day of September, 1807, instituted and incorporated an University in said territory, called and known by the name of " The Vincennes University," and enacted that certain persons named in said act, and their successors, should be and thereby were created to be a body corporate and politic, by the name and style of the " Board

of Trustees for the Vincennes University ;" and the said Legislature, among other things, provided in said act that, for certain purposes therein named, there should be raised a sum not exceeding twenty thousand dollars by a lottery, and that the said Board of Trustees should appoint five .discreet persons to be managers of said lottery, and who should have power to adopt such schemes as they might deem proper to sell lottery tickets for the purpose aforesaid, and to superintend the drawing of the same, and the payment of the prizes ; that, in pursuance of the provisions of said act, the said Board of Trustees, for the purpose of raising the sum of twenty thousand dollars in said act mentioned, on the 1st day of May, 1879, appointed Hiram A. Foulks, Wilson J. Williams, George G. Reily, William B. Robinson and Charles W. Jones, five discreet persons, as such managers ; that the said managers, having each qualified and given bond and security as required by said act and to the approval of said Board of Trustees, adopted the scheme alleged in the information, for raising the said sum of money, and, for that purpose, determined to conduct and manage a lottery, under the provisions of said act ; and they appointed the appellant an agent for the sale of the tickets, and he sold one of them to the person named in the information, and the sale so made is the same sale alleged in the information, and the lottery so intended to be had is the first lottery under said act ; that the said sale of said ticket was made for the purpose of aiding in procuring a library and the necessary philosophical and experimental apparatus, agreeably to the act aforesaid ; and that no funds had been raised for said purpose, nor had the trustees of said University raised or received any funds for. said purpose.

To this special plea or answer, the State, by its attorney, demurred upon the ground that it did not state facts sufficient to constitute a defence to the information, which de-

murrer was sustained by the court, and to this decision the appellant excepted.

The appellant then interposed a plea of not guilty to the information, and, a jury having been waived, the cause was tried by the court; and a finding was made that the appellant was guilty, and assessing his fine in the sum of one dollar. The appellant's motion for a new trial having been overruled, and his exception entered to this ruling, the court rendered judgment upon its finding, and from this judgment this appeal is now here prosecuted.

In this court the appellant has assigned, as errors, the following decisions of the court below :

1. In sustaining the State's demurrer to his special plea ; and,

2. In overruling his motion for a new trial.

In his motion for a new trial, the only causes therefor, assigned by the appellant, were, that the finding of the court was not sustained by sufficient evidence, and that it was contrary to law.

The two errors assigned by the appellant, on the record of this cause, may properly be considered together; for the questions for our decision are purely questions of law, and are presented by either or both of said errors, but more fully and clearly, perhaps, by the alleged error of the court, in overruling the motion for a new trial. A bill of exceptions, containing the evidence adduced upon the trial, is properly in the record. This evidence consisted chiefly of facts, the truth of which was admitted at the trial by the parties to the record. It is necessary, we think, to a proper understanding of the case, and of our decision of the questions arising therein, that we should give a summary, at least, of the admitted facts, as shown by the record, in this opinion.

By an act approved September 17th, 1807, it was enacted by the " Legislative Council and House of Representatives " of the Indiana Territory, " that an university be,

and is hereby instituted and incorporated within this Territory, to be called and known by the name or style of 'The Vincennes University,' that William Henry Harrison, John Gibson, Thomas T. Davis, Henry Vanderburgh, Waller Taylor, Benjamin Parke, Peter Jones, James Johnson, John Baddollet, John Rice Jones, George Wallace, William Bullitt, Elias McNamee, Henry Hurst, Gen. W. Johnston, Francis Vigo, Jacob Kuykendoll, Samuel McKee, Nathaniel Ewing, George Leach, Luke Decker, Samuel Gwathmey, and John Johnson, are hereby declared to be trustees of the said university, that the said trustees and their successors, be, and they are hereby created a body corporate and politic, by the name of 'The Board of Trustees for the Vincennes University,' and are hereby ordained, constituted and declared to be forever hereafter, a body politic and corporate, in fact and in name, and by that name they and their successors, shall, and may have continual succession, and shall be persons in law," etc.

Section 15 of said act was as follows:

"*And be it further enacted,* That for the support of the aforesaid institution, and for the purpose of procuring a library, and the necessary philosophical and experimental apparatus, agreeably to the eighth section of this law, there shall be raised a sum not exceeding twenty thousand dollars by a lottery, to be carried into operation as speedily as may be, after the passage of this act, and that the trustees of the said university shall appoint five discreet persons, either of their body, or other persons, to be managers of the said lottery, each of whom shall give security to be approved by said trustees, in such sum as they shall direct, conditioned for the faithful discharge of the duty required of said managers; and the said managers shall have power to adopt such schemes as they may deem proper, to sell the said tickets, and to superintend the drawing of the same, and the payment of the prizes; and that as often as said managers shall receive one thousand dollars, they shall deposit the

same in the hands. of the treasurer of the said board of trustees; and said managers and trustees, shall render an account of their proceedings therein at the next session of the Legislature, after the drawing of said lottery."

On the 1st day of May, 1879, the board of trustees for the Vincennes University appointed the persons named in the appellant's plea to the information, as five discreet persons to manage the lottery authorized by the act incorporating said University. Each of the said managers executed bond with security, as required by the 15th section of said act; and the said managers then adopted the scheme for a lottery mentioned in the appellant's special plea, and appointed the appellant an agent to sell tickets for such lottery. As such agent for the said managers of said lottery, the appellant sold the ticket in said lottery at the time, for the price, and to the person, mentioned in the information in this case. No drawing of prizes, nor lottery of any kind, had ever been held by or for said University, or by any one else, under the said law, or in any attempt to carry out its provisions. No funds had ever been raised or had by the said Board of Trustees, for the purposes named in the 15th section of the aforesaid act; nor did the said board have any funds with which to provide a library and the necessary philosophical and experimental apparatus for said University.

It seems to us that the question presented for our decision, by the appellant's special plea and by the evidence in the record, may be thus stated: Has the grant to the Board of Trustees for the Vincennes University, of the right and privilege to raise a fund of twenty thousand dollars by a lottery scheme, for the purpose of procuring a library and the necessary philosophical and experimental apparatus for said University, been in any manner abrogated, annulled or repealed since the passage of the said

act by the Territorial Legislature, under which the University was and is incorporated?

At the time of the passage of said act, the fundamental law for the government of the Indiana Territory was the ordinance of Congress of 1787, "for the government of the territory of the United States north-west of the river Ohio," and the act of Congress, approved May 7th, 1800, providing for the organization of the Indiana Territory as a separate government. It can not be doubted, we think, that, under this fundamental law, the Legislative Council and House of Representatives of the Indiana Territory had full and ample power to incorporate the Vincennes University with perpetual succession, and to endow it with the power and privilege of raising a fund, of a certain specified amount, by a lottery scheme, for the purpose of procuring a library and the necessary philosophical and experimental apparatus for said University. The institution to be incorporated was, in every sense, a private corporation; and, therefore, when the Board of Trustees for the Vincennes University accepted the terms of the act of incorporation, and the institution was organized thereunder, the franchises and privileges, including the lottery privilege, with which the University was endowed by the law-making power of the Indiana Territory, became and were matters of contract and vested rights, which could not be abridged, impaired, or annulled by any subsequent government thereafter organized within said Territory.

When the Indiana Territory was first organized as a State, it was declared in section 1 of article 12 of the Constitution of 1816, "that all rights, * * * contracts, and claims, both as it respects individuals and bodies corporate, shall continue as if no change had taken place in this government." Under this provision it is very clear, we think, that the rights and privileges of the University, under the territorial law by which it was incorporated, were continued in full force, unabridged and unimpaired, as

they existed prior to the organization of the State government. The constitution of 1816 contained no prohibition against the establishment of lotteries by legislative action, but was entirely silent on that subject.

By " An act concerning lotteries," approved February 3d, 1832, it was enacted by the General Assembly of this State, " That hereafter if any person or persons shall sell any lottery tickets, or share in any lottery, or scheme for a division of property, to be determined by chance, or shall make or draw any lottery, or scheme for a division of property as aforesaid, not authorized by law, on conviction thereof, upon presentment or indictment, [he or they?] shall be fined in any sum not exceeding five hundred dollars for each offence, at the discretion of the jury : *Provided*, that nothing in this act shall be so construed, as to affect any person selling any lottery tickets, or drawing any lottery, which shall have been made, and shall not be drawn at the taking effect of this act."

So far as we are advised, this act was the first legislation in this State which made the sale of lottery tickets an offence punishable by fine. This act was embodied, without alteration or amendment, in the Revised Statutes of 1838, p. 223. It will be observed, that this act expressly recognized the fact, that there were or might be lotteries " authorized by law," and the sale of tickets in such lotteries was not made an offence, and clearly was not within the purview of the act.

In the Revised Statutes of 1843, p. 982, the act of February 3d, 1832, was incorporated, with the omission only of the proviso in the act, as section 104, in chapter 53 of that revision, and, in the same manner and language, it was incorporated in the act defining misdemeanors, and prescribing punishment therefor, approved June 14th, 1852, as section 32 of said act. 2 R. S. 1852, p. 437.

By an act approved February 23d, 1859, this section 32 of the misdemeanor act was amended, and the section

as then amended is the law now in force on the subject of lotteries, and under which the appellant is prosecuted in this case. Acts 1859, p. 128; 2 R. S. 1876, p. 470.

By reference to this amended section 32 now in force, it will be seen that in it, as in the original act of February 23d, 1832, *supra*, the law is expressly limited to lotteries " not authorized by law." The necessary implication from this limitation is, that there were or might be lotteries authorized by law; and, in that event, it is clear that the sale of tickets in such lotteries would not come within the purview of said section 32, would not be a violation of the provisions of said section, and of course would not subject the person or persons making such sale to punishment thereunder.

Section 8 of article 15 of the constitution of this State, adopted in 1851, reads as follows :

" Sec. 8. No lottery shall be authorized; nor shall the sale of lottery tickets be allowed."

It is very clear, from the language of this section, that it has reference solely to what shall not be authorized and shall not be allowed, in the time future or subsequent to the time of the adoption of that section as a part of the fundamental law of this State. After the 1st day of November, 1851, the General Assembly of this State could not, under the constitution which took effect on that day, authorize or establish any lottery. But it is certain, we think, that neither the constitution of 1851, nor any law enacted thereunder or pursuant thereto, did or could in any manner abridge, impair or annul the lottery right, franchise or privilege with which the Board of Trustees for the Vincennes University was endowed by the territorial law for the incorporation of said University. This lottery franchise was and is a vested right and a matter of contract, which could not and can not be impaired, under the constitution of the United States, by either the State constitution or State laws. This is settled law, so long and so

well established that it hardly needs the citation of authorities in its support. In the case of *The Board of Trustees for the Vincennes University* v. *The State of Indiana*, 14 How. 268, the territorial act of 1807, under which the complainants in that case were incorporated, was considered to some extent by the Supreme Court of the United States, and, in delivering the opinion of the court, Mr. Justice McLean said :

" The complainants, by accepting and exercising their corporate powers, acquired certain rights, and made certain contracts, which could not be impaired by the Legislature. They constituted an eleemosynary corporation, in which the State has no property, and can exercise no power to defeat the trust."

See, also, on the subject under consideration, the case of *Dartmouth College* v. *Woodward*, 4 Wheat. 518; Cooley Const. Lim 279; *The Binghampton Bridge;* 3 Wal. 51; *Payne* v. *Baldwin*, 3 Sm. & M. 661; *Michigan State Bank* v. *Hastings*, 1 Doug. Mich. 225; and *Edwards* v. *Jagers*, 19 Ind. 407.

In conclusion, we hold that the lottery established by the Board of Trustees for the Vincennes University, under the 15th section of the territorial law for the incorporation of said University, as alleged in the information in this case, was and is a lottery " authorized by law ; " and that, for this reason, the appellant, in the sale of the ticket or share in said lottery, as alleged and admitted, was not guilty of any violation of said section 32 of the misdemeanor act, or of any offence under the laws of this State. It seems to us that the court erred, both in sustaining the demurrer to the appellant's special plea and in overruling his motion for a new trial.

The judgment is reversed, and the cause is remanded, with instructions to overrule the demurrer to the special plea, and for further proceedings in accordance with this opinion.