The State v. Woodward.

Opinion filed at the November term, 1882.
Petition for a rehearing overruled at the May term, 1883.

———◆———

No. 10,236.

THE STATE v. WOODWARD.*

CORPORATION.—*Franchise.*—*Forfeiture.*—A cause of forfeiture of a franchise can not be taken advantage of collaterally, or otherwise than by a direct proceeding for that purpose, and this can be brought only by the government which granted the franchise.

LOTTERIES.—*Contract.*—*Vested Right.*—*Constitutional Law.*—*Case Overruled.*— A State may, in the exercise of its police power and in the interest of good morals, take away and abrogate a lottery privilege previously granted, without impairing the obligation of a contract within the meaning of the Constitution of the United States. *Kellum* v. *State,* 66 Ind. 588, overruled.

SAME.—*Sale of Lottery Tickets.*— *Vincennes University.*—*Criminal Law.*—The lottery privilege conferred on the Vincennes University by the Territorial Legislature in 1807 was taken away by section 8, art. 15, of the State Constitution, and the statute (R. S. 1881, section 2077,) makes the sale of lottery tickets a crime.

From the Criminal Court of Marion County.

———

*The opinion in this case was the last written by Hon. JAMES L. WORDEN, His first opinion appears in the 10th Ind. Rep.    REPORTER.

*D. P. Baldwin*, Attorney General, and *J. B. Elam*, Prose-cuting Attorney, for the State.

*J. C. Denny, H. Burns, A. L. Roache, E. H. Lamme, M. Nye, F. W. Viche, R. G. Evans, G. G. Reily, W. C. Johnson* and *W. C. Niblack*, for appellee.

WORDEN, J.—This was a prosecution against the appellee, by affidavit and information, in the court below, for selling a lottery ticket in the Vincennes Lottery, Indiana, for the benefit of the Vincennes University.

The defendant pleaded as follows: "The said defendant, John T. Woodward, for his special plea and answer to the affidavit and information filed herein, admits that he sold the lottery ticket, as alleged in said affidavit and information, but says that he had lawful right so to do; for that by an act of the Legislature of the Territory of Indiana, approved on the 17th day of September, 1807, there was instituted and incorporated an university in said territory, called and known by the name of the Vincennes University, and enacted that certain persons named in said act, and their successors, should be, and thereby were created, a body corporate and politic, by the name and style of 'The Board of Trustees for the Vincennes University,' and the said Legislature, among other things, provided in said act that, for certain purposes therein named, there should be raised a sum not exceeding twenty thousand dollars ($20,000) by a lottery, and that the said board of trustees should appoint five (5) discreet persons to be managers of said lottery, and who should have power to adopt such schemes as they might deem proper to sell lottery tickets for the purpose aforesaid, to superintend the drawing of the same, and of the payment of prizes.

"And said defendant says that in pursuance of the provisions of said act the board of trustees aforesaid, for the purpose of raising the twenty thousand dollars ($20,000) in said act mentioned, on the first day of May, 1879, appointed five discreet persons managers, as provided for in said act, for the

---

The State *v.* Woodward.

---

purpose of adopting and carrying on said lottery for the purpose of raising the sum aforesaid; and the said managers, appointed as aforesaid, each and all qualified and gave bond and security as required by said act, to the approval of the board of trustees aforesaid; and the said managers afterward adopted a certain scheme in accordance with the provisions of said act, for raising the money aforesaid, and for that purpose determined to conduct and manage a lottery under the provisions of said act. And in pursuance of said scheme, and for the purpose of raising said sum of money in said act mentioned, and for the purpose therein stated, the ticket set forth and described in the affidavit and information in this action was issued by the authority and under the direction of said managers, for sale, and was delivered to this defendant as the agent of said managers, for sale; and the said ticket was by him sold as set forth in said affidavit and information, and was not sold by him in any other way, nor by virtue of any other power or authority whatever; and that the lottery adopted by said managers, and in which said ticket was issued, is the first lottery had or held under said act.

"The defendant further says that the sale of said ticket was for the purpose of aiding in providing a library and the necessary philosophical and experimental apparatus agreeably to the law aforesaid; and that no funds have been raised for said purpose, nor have the trustees of said university raised or received any funds for said purpose. Wherefore," etc.

The State demurred to this plea for want of sufficient facts, but the demurrer was overruled, and the State excepted and reserved the question of law arising thereon for the decision of this court. Reply in denial; submission of the cause to the court for trial; finding and judgment for the defendant. The State appeals and assigns for error the ruling on the demurrer.

The counsel for the State say in their brief: "Four questions naturally arise upon this appeal:

"*First.* Did the lottery privilege upon which the appellee relies ever have any legal inception?

" *Second.* If so, has the license been lost by failure to use it at the proper time?

" *Third.* If it has not been so lost, has it been within the authority of the law-making power of the State to take it away?

"*Fourth.* Has it been so recalled?"

We pass over the first question thus stated, as being unimportant to the decision of the main question involved, but assume that the lottery privilege had a legal inception.

We remark in reference to the second question, that the franchise can hardly have been lost by non-user, without the judgment of some competent tribunal adjudging the forfeiture. In Angell & Ames Corp., 11th ed., section 777, it is said: " A cause of forfeiture can not be taken advantage of, or enforced against a corporation collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation, so that it may have an opportunity to answer. And the government creating the corporation can alone institute such a proceeding; since it may waive a broken condition of a compact made with it, as well as an individual." *Brookville, etc., T. P. Co.* v. *McCarty,* 8 Ind. 392.

We come to the third question. Since the case of *Kellum* v. *State,* 66 Ind. 588, was decided, the decision of the Supreme Court of the United States in the case of *Stone* v. *Mississippi,* 101 U. S. 814, has been reported, in which the same question was involved. In that case an act of the Legislature of Mississippi was passed in 1867, creating a corporation, giving it power to establish and conduct a lottery, to continue in existence twenty-five years. In 1869, a Constitution of the State was ratified, providing among other things, that " the Legislature shall never authorize any lottery, nor shall the sale of lottery tickets be allowed, nor shall any lottery heretofore authorized be permitted to be drawn, or tickets therein to be sold." Subsequent legislation was provided enforcing the provisions of the Constitution. It was held

that the State might, in the exercise of its police power, and in the interest of public morals, take away and abrogate the lottery privilege theretofore granted, without impairing the obligation of contracts within the meaning of the Constitution of the United States. We quote the following passage from the opinion of the court in that case: "Any one, therefore, who accepts a lottery charter does so with the implied understanding that the people, in their sovereign capacity, and through their properly constituted agencies, may resume it at any time when the public good shall require, whether it be paid for or not. All that one can get by such a charter is a suspension of certain governmental rights in his favor, subject to withdrawal at will. He has in legal effect nothing more than a license to enjoy the privilege on the terms named for the specified time, unless it be sooner abrogated by the sovereign power of the State. It is a permit, good as against existing laws, but subject to future legislative and constitutional control or withdrawal."

As the Supreme Court of the United States is the ultimate tribunal for the decision of such question, the case of *Kellum* v. *State, supra,* must be so far modified as to harmonize with the decision of that court.

This brings us to the fourth question. It is probably true that a power to raise a given sum of money by means of a lottery implies the power to sell tickets in the lottery for that purpose. The question here is whether the board of trustees of the Vincennes University still retain the right to sell lottery tickets, or whether that right has been abrogated and annulled.

The 8th section of the 15th article of the Constitution of the State provides that "No lottery shall be authorized, nor shall the sale of lottery tickets be allowed." This provision is found in the article entitled "Miscellaneous," and not in article "Legislative." Hence no argument can be drawn from the place it occupies in the Constitution, that it was intended merely as a check upon future legislation.

The State v. Woodward.

We are of opinion that the provision is not a mere check upon future legislation, but an absolute prohibition of lotteries and the sale of lottery tickets. It is so far self-executing as to take away any right or authority that might theretofore have existed to conduct lotteries or sell lottery tickets. Its evident meaning is that from the time of the adoption of the Constitution there should be no authority for conducting lotteries, nor should lottery tickets be sold. It needed legislation, to be sure, to make the conducting of lotteries or the selling of lottery tickets a crime with a prescribed punishment, but the provision effectually took away any authority that might have previously existed to do those things. See Cooley's Const. Lim., 4th ed., pp. 99 to 102, and notes; also the opinion of the court delivered by Mr. Chief Justice SHARKEY, in the case of Brien v. Williamson, 7 How. Miss. 14.

The necessary legislation has been supplied, and the selling .of lottery tickets, or the making or drawing of " any lottery scheme or gift enterprise for the division of property, * * not authorized by law," is made a crime. R. S. 1881, sec. 2077.

If the words " not authorized by law," as thus used, imply that in the legislative mind there might be a lottery authorized by law, or that the sale of lottery tickets might be authorized by law, there is no foundation for the supposition.

The Constitution, as has been seen, took away any such authority as might have existed previous to its adoption.

The court below erred in overruling the demurrer to the defendant's plea; but the judgment can not be reversed, as by putting the defendant upon trial he was put in jeopardy, and can not be again tried for the offence. The appeal, however, is sustained, as taken upon a question reserved by the State, at the costs of the appellee. R. S. 1881, secs. 1846, 1882.

NOTE.—NIBLACK, J., did not participate in the consideration of this case.

Opinion filed at the November term, 1882.
Petition for a rehearing overruled at the May term, 1883.