[Crim. No. 253. Department Two.—December 3, 1897.]

THE PEOPLE, Respondent, v. RANSOM ELLENWOOD, Appellant.

CRIMINAL LAW—MAKING FICTITIOUS CHECK—PLEADING—SUFFICIENCY OF INFOR-
MATION—NONEXISTENCE OF PRETENDED MAKER—UNCERTAINTY—WAIVER
OF OBJECTION.—An information charging the defendant with making and
forging a fictitious check, payable to his order, and indorsing the
same with intent to defraud a person named, "whereas in truth
and in fact there was and is no such bank, corporation, copartner-
ship, or individual," as the assumed maker of the check, as defend-
ant "then and there well knew, and that the said instrument was
fictitious," sufficiently states a public offense; and the most that
can properly be said in reference to the question as to what time
the expression "was, and is" relates is that that expression is lack-
ing in the requisite certainty, but such objection can only be taken
by demurrer, and when not so taken is waived, and cannot avail
the defendant upon appeal from the judgment.

ID.—SECOND COUNT IN INFORMATION—JOINDER OF OFFENSES—REFERENCE TO
FIRST COUNT NOT PERMISSIBLE.—An information which in fact contains
two counts should charge the defendant in the second count as if
he had committed a distinct offense, it being upon the principle of
the joinder of offenses that the joinder of counts is admitted; and
such information cannot omit material allegations and import them
from the first count by referring to them by the use of the word
"said."

ID.—CHARGE OF MAKING AND PASSING FICTITIOUS NOTE IN ONE COUNT.—Al-
though either the making or the passing of a fictitious check with
intent to defraud the same person would constitute an offense under
section 476 of the Penal Code; yet when referring to the same in-
strument, and charging the same intent they constitute but one
offense, and may be properly charged in a single count; and in such
case there is neither necessity nor propriety in repeating the alle-
gations of the making of the check, and of the nonexistence of the
fictitious person whose name is signed to the check in connection
with the allegation of the passing of the check.

ID.—IMPROPER. INSTRUCTION—INCORRECT STATEMENT OF EVIDENCE—UNAU-
THORIZED CONCLUSION OF FACT.—Where the defendant testified that he

met Dalton, the maker of the note, in San Francisco, had known him in Los Angeles, and that he resided in New York; evidence for the prosecution that his name was not in the directory of San Francisco, and the testimony of a policeman that the defendant told him that there was no such man in San Francisco, are consistent with the testimony of the defendant; and a statement in the charge of the court referring to the testimony of the policeman, that the prosecution "have brought here a witness who undertakes to tell you that the defendant admitted to him that Dalton was a mere fiction," is not a statement of the evidence, but of an unauthorized conclusion of fact drawn by the court from the evidence, and is in violation of the constitutional provision that "judges shall not charge juries with respect to matters of fact."

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. William T. Wallace, Judge.

The facts are stated in the opinion.

J. N. E. Wilson, and George D. Collins, for Appellant.

W. F. Fitzgerald, Attorney General, and Charles H. Jackson, Deputy Attorney General, for Respondent.

HAYNES, C.—Defendant Ellenwood was tried upon an information charging him with making and passing a fictitious check with intent to defraud one James H. Doolittle, was found guilty as charged, and sentenced to imprisonment at San Quentin for fourteen years, and he appeals from said judgment and an order denying his motion for a new trial.

Appellant contends that the information upon which he was tried is insufficient in law. Counsel treats it as containing two counts, the first for making a fictitious check upon the Bank of California for the sum of one hundred dollars, payable to the order of Ransom Ellenwood, the appellant, and signed "F. S. Dalton," with intent to defraud James H. Doolittle; and the second count for passing it to said Doolittle with like intent. As to the first count, it is contended that the allegation of the nonexistence of F. S. Dalton is insufficient, and, as to the second count, that it altogether omits to allege the nonexistence of Dalton, and that if it charges anything it charges the uttering of a forged instrument under section 470 of the Penal Code.

The first count, after alleging that on the thirteenth day of

June, 1896, the defendant, with intent to defraud Doolittle, did make and forge a certain fictitious instrument in writing for the payment of money purporting to be signed by one F. S. Dalton, and payable to the order of the defendant, and charging defendant with its indorsement, alleged as follows:

"Whereas, in truth and in fact, there was and is no such bank, corporation, copartnership, or individual as F. S. Dalton in existence, as he, the said Ransom Ellenwood, then and there well knew, and that the said instrument in writing was fictitious."

The question is, To what time does the expression "was and is" relate?

The most that can properly be said is, that it lacks that certainty and directness which is required by section 952 of the Penal Code; but, as it states a public offense, the objection can only be taken by demurrer, and when not so taken, it is waived. (Pen. Code, secs. 1004, 1012.) It can, therefore, not avail the defendant upon this appeal. (*People v. Bryon,* 103 Cal. 677.)

It is also contended on behalf of appellant that the second count, charging that he uttered said fictitious check, is insufficient, because said second count does not allege the nonexistence of Dalton. The allegation is: "And the said Ransom Ellenwood, well knowing the said instrument to be forged and false and fictitious, did then and there," etc.

If the information in fact contained two counts, the second is fatally defective, since material allegations made in the first count cannot be imported into a second or other count by referring to them by the use of the word "said"; though in a second count the formal commencement is generally abbreviated to read: "The jurors aforesaid on their oaths aforesaid do further present"; but, as a rule, any count from which the commencement or the statutory conclusion is omitted is bad. (Bishop's New Criminal Procedure, sec. 429.) "Every separate count should charge the defendant as if he had committed a distinct offense, because it is upon the principle of the joinder of offenses that the joinder of counts is admitted." (Bishop's New Criminal Procedure, sec. 426.)

But in fact the information contains but one count, and there was neither necessity for nor propriety in repeating the allegation of the nonexistence of Dalton or the making of the check, though

either the making or the passing with intent to defraud the same person would constitute an offense under section 476 of the Penal Code; yet both, when referring to the same instrument and charging the same intent, constitute but one offense and may be properly charged in a single count. (*People v. Frank*, 28 Cal. 513; *People v. Harrold*, 84 Cal. 567; *People v. Gusti*, 113 Cal. 179.)

Several parts of the instructions given to the jury are urged as grounds for reversal. These principally relate to the ever recurring question as to whether they violate the constitutional provision that: "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." (Const., art. VI, sec. 19.)

An outline of the evidence is necessary to a proper understanding of these objections. On the part of the prosecution three witnesses were called. Mr. Doolittle testified that defendant had roomed and boarded with him many months, and always seemed to have plenty of money and paid his bills regularly until a few months before he left the hotel; that when he left he owed him a balance of twenty-seven dollars; that on June 13th defendant called and passed to him the check in question, that he paid him seventy-three dollars, the difference between the face of the check and the board bill; that on Monday he presented the check at the bank and payment was refused; that some time afterward defendant paid him back the seventy-three dollars, but he thought it was after defendant was arrested.

A bookkeeper from the Bank of California testified that at no time during the last ten years was there any account in the name of F. S. Dalton.

Ross Whitaker, a detective police officer, testified that he arrested the defendant; that there is no such name as F. S. Dalton in the San Francisco directory for 1896; that he had a short conversation with defendant when he arrested him, in which defendant told witness: "There is no such man here as F. S. Dalton."

The defendant testified that on Saturday, June 13th, about noon, he stopped in at the Palace Hotel, and met an old friend, Mr. F. S. Dalton, who was temporarily in the city; that he knew him in 1895 in Los Angeles, and that Dalton is a resident of New York; that he had luncheon with Dalton at the Palace

grillroom, where they remained for an hour or so; that Dalton told him it was his intention to go away, and asked witness if he could cash a check for him on the Bank of California; that it being after banking hours, and knowing the man as he did, and not suspecting that Dalton had no funds in the bank, he cashed the check; that he knew nothing of any trouble about the check for two weeks, when he was arrested, and that as soon as he found there were no funds in the bank he returned to Mr. Doolittle the money he was out.

Appellant contends that the court erred in the following instruction to the jury: "Now, the prosecution has brought here a directory of this city and county; has also brought here a witness who tells you he has searched in vain for such a person as F. S. Dalton; they have brought here a witness who undertakes to tell you that the defendant admitted to him that Dalton was a mere fiction."

It is contended that the last clause of the above sentence violated the constitutional provision that: "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." (Const., art. VI, sec. 19.)

The testimony to which the court here referred was given by the police officer who made the arrest. He testified as follows: "When I arrested the defendant, Ellenwood, I had a brief conversation with him in which he told me that there was no such man here as F. S. Dalton."

It might be true that Dalton's name was not in the directory, that the officer searched the city for him in vain, and that no such man was here at the time the statement was made by the defendant to the officer, and yet Dalton be a real person, and that he made the check at the time and under the circumstances detailed by the defendant; but if Dalton had no existence, was "a mere fiction," it could not be true that Dalton made the check, nor that defendant cashed it for him. In short, the statement made by the defendant was consistent with his innocence, while the statement as made by the court was not only inconsistent with his innocence but construed it as a direct admission of guilt. There can be no question that the court referred to the testimony of the policeman, since no other witness testified as to any conversation with the defendant upon the subject.

The statement of the court put a construction upon the language of the witness, and in effect told the jury what the words spoken by the witness meant; that when the defendant said, "there is no such man here as Dalton," it meant that Dalton was "a mere fiction." It was not a statement of the evidence, but of a conclusion of fact drawn by the court from the evidence as given by the witness, a conclusion, too, that neither the court nor the jury could properly draw. Besides, it had a direct tendency to discredit the defendant's testimony, given in his own behalf, that he met Dalton in San Francisco, had known him in Los Angeles, and that he resided in New York; for, if it was true that Dalton was a mere fiction, it could not be true that he ever knew or saw him, or received the check from him, while the statement made to the officer that there was no such person "here" was entirely consistent with the facts to which he testified.

The instruction under consideration will not bear the construction put upon it by counsel for respondent; a construction, by the way, which, taken literally, would impute to the court an intentional disregard of the constitutional provision hereinbefore quoted. For the error above specified the judgment must be reversed.

It is also contended, however, by appellant that the instruction in which the attention of the jury was called to the fact that defendant was on trial, and as to what motives the evidence may disclose the witnesses to have, is erroneous. This instruction, which was given at some length, I think does not go beyond the instruction in *People v. Cronin,* 34 Cal. 191, which has been several times reluctantly followed in later cases; but we would call attention to the recent case of *People v. Van Ewan,* 111 Cal. 149, where this court, by Mr. Justice McFarland, said: "If the question were an entirely open one, we would feel constrained to hold upon principle that any instruction at all as to the credibility of any witness, or the weight to be given to his testimony, is violative of section 19 of article VI of the constitution, which provides that 'judges shall not charge juries with respect to matters of fact,' and section 1887 of the Code of Civil Procedure, which, referring to a witness, provides that the jury are the exclusive judges of his credibility."

In view of the conclusion reached, the point made by counsel

for appellant that the evidence is not sufficient to justify the verdict need not be considered.

The judgment and order appealed from should be reversed and a new trial ordered.

Britt, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial ordered.

McFarland, J., Temple, J., Henshaw, J.