[Crim. No. 69. Second Appellate District.—November 2, 1907.]

In re PETER JOHNSON, on Habeas Corpus.

CRIMINAL LAW—LIQUOR LICENSE ORDINANCE—COMPLAINT FOR MISDEMEANOR—CONJUNCTIVE CHARGE—SINGLE OFFENSE.—A complaint in the justice's court for the violation of an ordinance, making it a misdemeanor to keep a saloon or bar where any wine or intoxicating drinks are manufactured, sold, dispensed, or given away, etc., without first having obtained a license therefor as provided in the ordinance, which charges the acts done in the conjunctive form, preceding the charge that said acts were done without first obtaining a license therefor, charges but one offense, and is good even as against a demurrer for duplicity or misjoinder.

ID.—REVIEW ON HABEAS CORPUS—JURISDICTION—DEFECTS.—The inquiry on habeas corpus extends only to the jurisdictional question whether the complaint charges an offense known to the law; and the proceeding cannot serve the office of a demurrer or appeal. If

an offense is charged, any defects or an artificiality in statement
or unnecessary averments, or misjoinder of offenses, will not warrant
a discharge on *habeas corpus*.

Id.—Validity of Judgment—Imprisonment—Alternative Imprison-
ment for Unpaid Fine—Denial of Writ.—When the judgment
follows the terms of the ordinance and provides for imprisonment,
and a fine less than the maximum provided for, with an alternative
of imprisonment for nonpayment of the fine, at the rate of $2 per
day, it is sufficient for the denial of the writ of *habeas corpus* that
the prisoner is held under the first provision for imprisonment, with-
out inquiring as to the effect of the alternative imprisonment for
nonpayment of the fine.

Id.—Place of Imprisonment—City Jail Part of County Jail.—Where
the city had rented certain cells in the county jail for the pur-
poses of a city jail, that portion of the county jail is to all intents
and purposes the city jail; and when the defendant was committed
to the city jail, and confined in those rented cells, he cannot com-
plain that he is improperly imprisoned in the county jail.

Id.—Jurisdiction of City Justice's Court of San Diego.—Where
the city of San Diego having a freeholders' charter has not availed
itself of authority given to it by section 8½ of article XI of the
constitution to establish a police court, the city justice's court
therein is a valid court properly established by a general law, and
has jurisdiction of a misdemeanor established by a city ordinance.

APPLICATION for writ of *habeas corpus* to the keeper of
the city jail of the City of San Diego.

The facts are stated in the opinion of the court.

L. E. Dadmun, for Petitioner.

J. W. Puterbaugh, for Respondent.

TAGGART, J.—This is an application for a writ of *habeas
corpus*. Petitioner is detained in the county jail of San Diego
county under a commitment issued in execution of a judgment
of the city justice of the peace of the city of San Diego.
Petitioner was found guilty of violating the liquor license or-
dinance of that city (No. 2341) making it unlawful for any
person "to keep a saloon, bar," etc., . . . "where any wine
. . . or any intoxicating drinks are manufactured, sold, dis-
pensed, or given away, *or* to manufacture, sell, dispense, or

give away any such wine," etc., "without first having obtained a license therefor, as provided in this ordinance," etc.

The complaint upon which the conviction was had charges that the petitioner did "unlawfully, then and there, keep a saloon, bar," etc., . . . "where . . . liquors were then and there sold," etc., . . . "*and* did then and there sell, dispense," etc., . . . "to-wit: malt beer, without first obtaining a license therefor," etc. Petitioner contends that the complaint states two distinct offenses, and that a general verdict on such a complaint is void.

If the authorities from other jurisdictions cited by appellant to support his contention hold as claimed, they do not declare the rule in this state. (Compare *State* v. *Pierce*, 136 Mo. 34, [37 S. W. 815], with *People* v. *Ellenwood*, 119 Cal. 166, [51 Pac. 553].) The selling of malt beer was but incidental to the keeping of the saloon or bar, and the proof that petitioner did then and there sell, dispense, and give away liquors would be but one way of showing that liquors were then and there sold, dispensed and given away. Section 1 of the ordinance, which is the section alleged to have been violated, makes it an offense to keep a saloon where liquors are sold. The showing that liquors were sold was necessary to establish the keeping of the saloon in the manner declared by that section to be unlawful. All the acts mentioned were charged in the conjunctive and all preceded the charge that such acts were done without first obtaining a license therefor. But one offense, therefore, was charged, and the complaint was good even against a demurrer for duplicity or misjoinder. (*People* v. *Dole*, 122 Cal. 486, [68 Am. St. Rep. 50, 55 Pac. 581] ; *People* v. *Eagan*, 116 Cal. 287, [48 Pac. 120].) Where a statute enumerates a series of acts, either of which separately or all together may constitute the offense, all of such acts may be charged in a single count, for the reason that notwithstanding each act may, by itself, constitute the offense, all of them together do no more, and likewise constitute but one and the same offense. (*People* v. *Gusti*, 113 Cal. 179, [45 Pac. 263] ; *People* v. *Leyshon*, 108 Cal. 440, [41 Pac. 480].)

If the complaint were defective in the respect claimed, this would be a matter which could only be considered on appeal, and no relief could be afforded on this ground by *habeas corpus*. (*Ex parte Gibson*, 31 Cal. 620, [91 Am. Dec. 546] ;

*Ex parte Long,* 114 Cal. 159, [45 Pac. 1057].) While the inquiry on *habeas corpus* may extend to the question whether the complaint or information charges an offense known to the law, since this objection goes to the question of jurisdiction (*Ex parte Maier,* 103 Cal. 476, [42 Am. St. Rep. 129, 37 Pac. 402]), the proceeding may not be made to subserve the office of a demurrer or appeal; and if the facts alleged state an offense, no matter how defectively or inartificially they may be stated, or however confused and beclouded they may be rendered through intermingling them with immaterial or unnecessary averments, the writ will not lie. (*Ex parte Williams,* 121 Cal. 328, [53 Pac. 706]; *Ex parte Harlan,* 1 Okla. 48, [27 Pac. 920].) Misjoinder of offenses in a complaint or information will not warrant a discharge on *habeas corpus.* (15 Am. & Eng. Ency. of Law, p. 175, citing *In re Green,* 134 U. S. 377, [10 Sup. Ct. Rep. 586].)

The ordinance violated provides a penalty of fine and imprisonment, or both. For the former a minimum of $25 and a maximum of $300 are prescribed, and the maximum imprisonment is fixed at one hundred and fifty days. The judgment is that petitioner be imprisoned for thirty days in the "City Jail" and pay a fine of $240, and if the fine be not paid on or before the termination of the thirty days' imprisonment, that he be imprisoned in the city jail "until the fine be duly satisfied, in the proportion of one day's imprisonment for every $2 of fine, and on the payment of such portion of the fine that shall not have been satisfied by imprisonment, at the rate above prescribed, that the defendant be discharged from custody."

It is urged on the authority of *Ex parte Wadleigh,* 82 Cal. 520, [23 Pac. 190], and *People* v. *Hamberg,* 84 Cal. 475, [24 Pac. 298], that the judgment is void. The case at bar does not come within the reason or facts of either of those cases. If we were to hold that the portion of the judgment providing that petitioner be imprisoned for nonpayment of fine were void (which we do not), we could not release the prisoner on this ground, as that portion of the judgment is severable from the rest. The portion of the judgment prescribing imprisonment as a punishment is now in force, and the petitioner cannot now be discharged, whatever may hereafter be his rights

6 Cal. App.—47

regarding the portion relating to the fine.  (*Ex parte Mitchell,* 70 Cal. 1, [11 Pac. 488].)

The cases construing section 1205 of the Penal Code are to be distinguished from cases in which the law (whether statute or ordinance) violated provides for imprisonment in case of failure to pay the fine where both fine and imprisonment are imposed.  The ordinance here in question provides that both fine and imprisonment may be imposed as a penalty for one violation, "and in the event that the fine imposed hereunder is not paid then (be punished) by imprisonment . . . at the rate of one day for every two dollars of fine so imposed," etc.  (*Ex parte Green,* 94 Cal. 387, [29 Pac. 783]; *Ex parte Rosenheim,* 83 Cal. 388, [23 Pac. 372]; *People* v. *Brown,* 113 Cal. 35, [45 Pac. 181].)

The commitment was to the city jail, while petitioner is imprisoned in the county jail.  By the return to the writ made by the chief of police of the city of San Diego, it appears that by an arrangement between the city of San Diego and the county of San Diego the latter has leased to the former five cells of the "misdemeanor-room" of the county jail, to be used as a city jail, and that petitioner was confined in one of these cells.  This portion of the county jail, then, to all intents and purposes, is the city jail of the city of San Diego.  There is nothing in the claim that petitioner is not imprisoned in accordance with the sentence of the court.

The principal reliance of petitioner, however, is upon the contention that the city justice court of the city of San Diego before which he was tried has no legal existence.  The city of San Diego is organized under a freeholders' charter, ratified by the legislature March 2, 1889.  (Stats. 1889, p. 643.)  It has never availed itself of the authority, given it by the adoption of section 8½ of article XI of the constitution, to create a police court.  The city justice court under consideration depends upon section 103 of the Code of Civil Procedure for its existence, and the classification of cities used for the legislation in this section is that provided by the "Municipal Corporations Classification Act of 1883," as amended in 1901 [Stats. 1901, p. 94].  Under this classification, if applicable to it, the city of San Diego is of the third class.  (Henning's General Laws, p. 743.)

This act, petitioner claims, has no application to cities organized under a freeholders' charter, but appertains only to those cities and towns organized and incorporated under the general municipal corporations act of 1883. (Henning's Laws, p. 744.)   To sustain this view he relies chiefly upon the language of section 3 of the classification act, as amended in 1899 (Stats. 1899, p. 141), which provides how municipalities may cause an enumeration of the inhabitants thereof to be taken for the purpose of an immediate reorganization as a municipality of a higher or lower class.   By this section provision is made for an election to reorganize in such higher or lower class under the general municipal corporations act, "and thereupon such proceedings shall be had and election held as provided in the general law for the reorganization, incorporation, and government of municipal corporations," etc.

Section 3, however, does not contain the only method provided for ascertaining the number of inhabitants of a city or town for the purpose of determining the class to which such city or town belongs.   Section 2 prescribes the general method, to wit, by United States census, and the proceeding under section 3 is only employed in the particular instances therein specified.   The proceeding under the latter section, then, was not necessary to the determination of the class to which the city of San Diego belonged.   There is nothing in the title or the language of the classification act which confines the application to cities and towns organized under the general municipal corporations act.   As amended in 1901, it contains a class which does not appear among those provided by the municipal corporations act, to wit, those having more than 100,000 and not exceeding 200,000 population, which constitute the "first and one-half class."   It is apparent, therefore, that the legislature did not intend to restrict the use of the classification act to those cities and towns organized under the general law. All city justices' courts in the state, whether in cities with freeholder charters, or in those organized under the general law, are dependent upon section 103 of the Code of Civil Procedure, and therefore upon the classification act for a valid existence.

The legislation in this regard is based upon sections 1 and 11, article VI, of the constitution.   The latter section provides

that the legislature shall determine the number of justices of the peace to be elected in townships, incorporated cities and towns, and shall fix by law their powers, duties, etc.   Under these provisions, the legislature has created a state system of courts of which the court here under consideration is a member or branch.   In doing this it has used the municipal classi-fication act to avoid the objections urged in the cases cited by petitioner.   (*Miner* v. *Justice's Court,* 121 Cal. 264, [53 Pac. 795], and *Ex parte Giambonini,* 117 Cal. 573, [49 Pac. 732].) In the former, an attempt was made to create a justice's court, and in the latter a police court, by special act.   This it was held could not be done.

The classification act, made the basis of the legislation here in question, for that purpose is recognized as proper in a number of recent decisions of the supreme court.   (*In re Mitchell,* 120 Cal. 384, [52 Pac. 799].   See, also, concurring opinion of Justice Henshaw, p. 394.)   It was frequently held before the adoption of section 8½ of article XI of the constitution, that such laws as section 103 of the Code of Civil Procedure con-stituted a valid exercise of the legislative power, and subdi-vision 1 of section 8½ shows no intention to interfere with the power of the legislature in the matter of provision for jus-tices of the peace for cities and towns.   It is limited in terms to police courts.   (*Graham* v. *Mayor, etc.,* 151 Cal. 465, [91 Pac. 147].)   No reason has been suggested why the classifica-tion in this act may not be made the basis of any necessary general legislation for all the municipal corporations in the state.   Justices' courts being a part of the constitutional ju-diciary of the state, there appears to be some question whether it is necessary to classify them for the purpose of creating and establishing them as distinguished from prescribing their du-ties and jurisdiction (*In re Mitchell,* 120 Cal. 390, [52 Pac. 802]), but assuming a classification to be necessary, a classi-fication by population for this purpose is in accord with the whole spirit of the constitution and is the method prescribed by that instrument for the classification of cities and towns, as well as counties.   There being nothing in the language of the classification act restricting its use to cities and towns or-ganized under the general law, we see no objection to its use by the legislature in creating city justices' courts for all cities and towns of the state, including those acting under a free-

holders' charter.   The court in question, therefore, is a valid court properly established by a general law.

Writ denied and prisoner remanded to the custody of the chief of police of the city of San Diego.

Allen, P. J., and Shaw, J., concurred.