[Crim. No. 334.   Third Appellate District.—February 3, 1916.]

THE PEOPLE, Respondent, v. R. J. WILLIAMS, Appellant.

INTOXICATING LIQUORS—SELLING AND FURNISHING WITHIN NO-LICENSE TERRITORY — INFORMATION — SINGLE OFFENSE. — An information charging a defendant with the crime of selling and furnishing alcoholic liquor within no-license territory is not subject to demurrer on the ground that it states two offenses.

ID.—SALE ON ISLAND IN SACRAMENTO RIVER—CHARACTER OF TERRITORY—CONSTRUCTION OF COUNTY ORDINANCE.—The sale of alcoholic liquors at and on a small tract of land, called Coney Island, lying in the Sacramento River just above the city of Red Bluff, in the county of Tehama, and near the boundary line between the first and third supervisorial districts of such county, which districts are "no-license territory," is a sale within "no-license territory," as the description of the boundary lines of such districts is to be construed so as to make the thread of the main channel of the Sacramento River the dividing line between them.

ID.—COUNTIES—JURISDICTION OVER RIVERS.—Subject to whatever right the United States reserved in the control of the waters of the Sacramento River, for purposes of navigation or other purposes, the state was given the power to partition its territory into counties, including the beds of streams navigable or non-navigable, and was empowered to confer upon such counties the authority to exercise over all such partitioned territory the right to administer its government and to provide for the welfare of its inhabitants.

ID.—CREATION OF SUPERVISORIAL DISTRICTS—TERRITORY INCLUDED—PRESUMPTION.—In construing the intention of the board of supervisors in enacting the ordinance creating the supervisorial districts of the county of Tehama, the then existing conditions must be considered, and it must be assumed that the board intended to include within the boundaries of the several districts all the territory of the county, and not to leave strips of territory lying between any two districts, whether consisting of land, or water, or both, without local government.

ID.— PARTITIONING OF SUPERVISORIAL DISTRICTS — RULE AS TO PRIVATE
GRANTS INAPPLICABLE.—The partitioning of the territory of a county
into administrative districts is not a grant in the sense that such
term is used in section 830 of the Civil Code, which provides that
except where the grant under which the land is held indicates a dif-
ferent intent, the owner of the upland, when it borders upon a navi-
gable lake or stream, where there is no tide, takes to the edge of
the lake or stream, at low-water mark.

APPEAL from a judgment of the Superior Court of
Tehama County, and from an order denying a new trial.
John F. Ellison, Judge.

The facts are stated in the opinion of the court.

James T. Matlock, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones,
Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was accused of the crime of
selling and furnishing alcoholic liquor within no-license ter-
ritory in the county of Tehama, on or about the twenty-second
day of July, 1915, to wit, "at and on an island in the Sacra-
mento River, near the boundary line of the city of Red Bluff,
in said Tehama County, near the boundary line between su-
pervisorial district No. 1 and supervisorial district No. 3 and
within one or both, all of the territory within both said super-
visorial districts of said supervisorial districts being then and
there no-license territory," etc.

Defendant moved the court that plaintiff be required "to
state in which supervisor district the alleged crime took
place." The motion was denied. A demurrer to the infor-
mation on various grounds was overruled and defendant
pleaded not guilty. Upon the trial the jury found defend-
ant guilty as charged in the information and the court accord-
ingly entered judgment that defendant be imprisoned in the
county jail for the period of 75 days. Defendant appeals
from the judgment and from the order denying his motion
for a new trial.

The evidence is uncontradicted that defendant sold alcoholic
liquor as charged, the only question being, Was the liquor
sold within no-license territory?

The place where the liquor was sold is a small tract of land
called "Coney Island," and lies in the Sacramento River just

above the city of Red Bluff. At this point the east boundary line of district No. 1 is described, in the proceedings of the supervisors of September 7, 1880, thus: "Beginning at the junction of Cottonwood creek with the Sacramento river, running easterly along the west bank of the Sacramento river to Walnut street in the town of Red Bluff." The west boundary line of district No. 3 is described as "all that portion of Tehama county lying east of the Sacramento river."

It appeared that, about 20 or 25 years ago, this island was formed, and was then a small sandbar that "was out of the water in the month of September, and in the course of time some willows and cottonwood trees began to grow on it"; that it grew by accretions until now the island is "between five and six acres in extent. . . . It is overflowed in the wet season of the year, but reappears again in the dry season; . . . it is between 4 and 5 feet above the low water mark." It appeared further that for several years no water ran along the east side of the island in the summer, but now there is water around it at all times; that the main channel is west of the island; that the "main current has always flowed there," as one witness testified who had known the river at that point for 25 years. Between the island and the west bank of the river the distance is 132 feet and between the island and the east bank it is about 80 feet.

Appellant contends, first, that the demurrer should have been sustained for the reason that the information states two offenses—"one for selling alcoholic liquor and the other for furnishing alcoholic liquor"; second, that the court erred in denying defendant's motion to make the charge more specific; third, "The main proposition upon which defendant relies for a new trial is this, that the territory in which the alleged alcoholic liquor was alleged to have been sold and furnished is within a 'wet zone,'" and hence not "within no-license territory."

The demurrer was properly overruled. (*In re Johnson,* 6 Cal. App. 734, [93 Pac. 199]; *People* v. *Winkler,* 21 Cal. App. Dec. 695.\*) The motion was based upon the same

---

\*On January 17, 1916, the supreme court granted a petition to have this cause heard and determined in the supreme court after judgment in the district court of appeal, and said cause was then transferred to the supreme court for hearing and decision.

ground as urged against the information and was properly denied.

Upon the principal proposition, appellant at the outset calls attention to section 2349 of the Political Code, which declares the Sacramento River to be a "public way, between its mouth and the mouth of Middle Creek," which latter is in Shasta County. He cites *Hendricks* v. *Feather River Canal Co.*, 138 Cal. 423, [71 Pac. 496], where it was held: "If the navigability of the river should be deemed necessary to a boundary of the patent thereby, it must be presumed upon appeal, in the absence of evidence, that the river was navigable at the point in question." Section 830 of the Civil Code is cited, which provides that "except where the grant under which the land is held indicates a different intent, the owner of the upland, when it borders . . . upon a navigable lake or stream, where there is no tide, the owner takes to the edge of the lake or stream, at low-water mark; when it borders upon any other water, the owner takes to the middle of the lake or stream." Also section 1016 of the same code is cited, where it is declared that, "Islands and accumulations of land, formed in the beds of streams which are navigable, belong to the state, if there is no title or prescription to the contrary."

Appellant relies upon the case of *State* v. *Eason*, 114 N. C. 787, [41 Am. St. Rep. 811, 23 L. R. A. 520, 19 S. E. 88], which concerned the jurisdiction of a municipality bounded by a navigable river, and it was held that it does not extend beyond low-water mark, in absence of anything in the charter extending the limit of its jurisdiction expressly or by fair implication. As incorporated, the boundaries of the town of Beaufort began "at a cedar post in the Pamlico river," thence by several courses and distances away from the river, "thence on a line parallel with Washington street to Pamlico river, and thence with the river to the beginning." It was held in that case that the same rules of construction apply as in the case of a grant from one individual to another, and that an ordinance of the town of Beaufort prohibiting the throwing of fish or offal into the river was void for lack of jurisdiction, the boathouse from which the fish and offal were thrown being in the river outside the low-water mark, though immediately adjoining the town wharf.

Subject to whatever right the United States reserved to the control of the waters of the Sacramento River, for purposes of navigation or other purposes, undoubtedly the state was given the power to partition its territory into counties, including the beds of streams navigable or non-navigable, and was empowered to confer upon such counties the authority to exercise over all such partitioned territory the right to administer its government and to provide for the welfare of its inhabitants—for example, to construct highways, build bridges across navigable streams as parts of such highways, and generally to exercise police powers within such territory. The exterior boundaries of the county of Tehama fixed by statute concededly embrace all the territory included in the five supervisor districts. These supervisor districts were formed out of the territory comprising the entire county—five of them—at the same session of the board, on September 7, 1880. That was nearly ten years before this so-called island began to form. It was but a small sandbar 25 years ago. In construing the intention of the board in enacting the ordinance creating these districts, we must consider the then existing conditions; and we must also assume that the board intended to include within the boundaries of these several districts all the territory of the county, for the purpose, as declared, was to divide the county—all of it—into supervisor districts pursuant to law, and to carry out the objects of the statute by which certain duties were devolved upon the board chosen to administer the affairs of the several districts. It is not to be supposed for a moment that the board intended to leave strips of territory, without local government, lying between any two of the districts, whether consisting of land, or water, or both, and before such an intention can be imputed to the board or deduced from its action or nonaction, it should be made very clearly so to appear.

Ever since 1880, a period of 35 years, the supervisors have treated the Sacramento River, which bisects the county, as within their jurisdiction; have built costly bridges over it; established and maintained ferries across the river; and until the question arose in this case their right to so regard the river has never been disputed. We do not think that the rule applied to grants of land by one person to another is of unqualified application in this case. This partitioning of the territory of the county into administrative districts is not a

grant in the sense that term is used in section 830 of the Civil Code, *supra.* And if the rule as to grants were to apply, there is a presumption that the purchaser's title extends as far as the grantor owns in both tidal and fresh waters. (Gould on Waters, secs. 195, 196.) This presumption, it seems to us, would hold where a legislative body is partitioning for purposes of local government a territory over which it has undoubted jurisdiction.

Mr. Gould states another rule, to wit: "By the common law the boundary line *prima facie* between towns and parishes when separated by a fresh-water river, is its thread." (Gould on Waters, sec. 202.) Here the thread of the Sacramento River was shown by undisputed testimony to be to the west of "Coney Island," which latter would by this rule lie entirely within district No. 3.

In *King* v. *King,* 7 Mass. 499, it was held that, where land lying on both sides of a river is partitioned, the land on one side being granted to one and the land on the other side to the other of the parties, the division line will be the center thread of the stream. But apart from the rules of conveyancing, it seems to us that the view expressed in *Hamilton* v. *McNeil,* 13 Gratt. (Va.) 389, 394, is reasonable, and should apply here. In that case the question depended upon the construction of various statutes of the general assembly forming the counties of Bath, Pendleton, and Pocahontas (Va.), and fixing their boundaries. Said the court: "The court is further of the opinion that these acts being intended merely for the division and arrangement of the territory which they embrace for local municipal purposes and the convenient and economical administration of the government within the same, should not be construed with the same strictness which is to be observed in the construction of a grant or of a contract between individuals affecting the rights of property, but a more liberal beneficent rule should be adopted, the object being to ascertain the true meaning and intention of the legislature in any given act by considering the same in connection with all others *in pari materia* and with the general policy of the legislature. . . . Weight should be given to the contemporaneous interpretation placed upon the same by the courts and other lawful authorities within the same and by the population at large residing therein."

Without pursuing the question further, our conclusion is that the description of the respective boundary lines of the two districts should be construed so as to make the thread of the main channel of the river the dividing line between them, and hence the jury were justified by the evidence in finding that defendant was guilty of selling and furnishing alcoholic liquor in no-license territory, to wit, in district No. 3.

Error is claimed of an instruction given the jury by the court, in which the court said, in construing the language used in defining a boundary of district No. 3: "I instruct you that when it said east of the Sacramento river it meant east of the main thread of the channel of the Sacramento river. It does not say the east bank. It says, east of the Sacramento river, and that means any land east of the center of the main channel or thread of the Sacramento river. So, in this case, if you find that 'Coney Island,' is east of the main thread of the main channel of the Sacramento river, then I instruct you that it is in supervisor district number three." It was within the province of the court to construe the language used in describing the boundary, and the court very properly left it to the jury to say where Coney Island was situated with reference to the thread of the river.

The court did not err in refusing defendant's offered instruction that "if you find from the evidence that the east boundary line of supervisor district No. 1 runs along the west bank of the Sacramento river, then in that event, said Coney Island is not within said supervisor district No. 1." In no view that could have been taken of the evidence was the instruction applicable.

Error is also claimed in refusing an instruction "that if you find from the evidence that the *east* boundary line of supervisor district No. 3 runs along the west bank of the Sacramento river, then in that event, said Coney Island is not within said supervisor district No. 3." Probably defendant meant the *west* boundary line and not the *east,* as stated in the instruction, for the *east* boundary line is somewhere in the Sierra Nevada Mountains. The undisputed evidence was that the thread of the stream—the main channel of the river— was west of Coney Island. The court, as we have held, properly instructed the jury that the description given of the west boundary line of district No. 3 was the thread of the stream. The instruction requested would have left with the jury to

determine as a question of fact what the court had rightly disposed of as a question for the court. The instruction, assuming that the west boundary of district No. 3 was meant, would have made it coincident with the east boundary of district No. 1 and west of the Sacramento River, and, of course, west of its thread. In that view the island would undoubtedly be situated in district No. 3 and in no-license territory, and the instruction would have become a question of fact directly contrary to all the evidence.

We discover no error in any of the proceedings and the judgment and order are, therefore, affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 3, 1916.