## Ex parte A. J. SHOW.

### No. A-943.   Opinion Filed December 3, 1910.

1.  HABEAS CORPUS—Sufficiency of Indictment or Information.
    The general rule is that the writ of habeas corpus may not be
    used, either before or after conviction, to test the sufficiency of
    an indictment or information; but the rule is subject to the
    qualification that when the accusation is not merely defective or
    technically insufficient, not merely demurrable or subject to a
    motion to quash, but is fundamentally defective in substance, so
    that it charges a crime in no manner or form and by no intend-
    ment, a party in custody to answer thereto, or after conviction
    thereon, will be discharged on habeas corpus.

2.  CONSTITUTIONAL LAW—Self-Executing Provisions—Elections.
    Sec. 4a of art. 3 of the state Constitution, being an amendment
    adopted by the people at the election held on August 2, 1910,
    prescribing an educational qualification for certain voters, is
    self-executing.

3.  ELECTIONS—Educational Qualifications — Registration.   The
    question of a person's possession of the educational qualification
    prescribed for voters by sec. 4a of art. 3 of the state Constitution
    is to be determined by the precinct election inspector having
    registration in charge and at the time of registration, if registra-
    tion is required; and it is only when and where registration is
    dispensed with that such question is to be determined by the
    precinct election officers at the polls.

4.  ELECTIONS—Registration—Statutory Provisions. Under art. VIII
    chap. 31, Session Laws, 1907-8, registration is required in cities
    of the first class in this state; and electors therein, to be entitled
    to vote, are required to register during the month of July preced-
    ing each biennial primary election held in August; but persons
    who become legal voters subsequent to such registration and on
    or before the general election in November, may register during
    the last week in October preceding the general election in Nov-
    ember.

5.  SAME.  Since the act approved March 28, 1910, (Session Laws
    1910, p. 242.) has become effective, providing for the challenge
    of any voter, and further providing that after challenge he
    may vote only upon making a certain affidavit therein prescribed,
    the registration provided for in art. VIII, chap. 31, Session
    Laws 1907-8 is only prima facie and not conclusive evidence of
    the possession of the qualifications mentioned in the subsequent
    act approved March 28, 1910.

6.  SAME—Effect of Constitutional Amendment—Educational Test.
    Registration made in July, 1910, is no evidence of a person's

possession of the educational qualification prescribed for electors by the constitutional amendment adopted August 2, 1910; but registration made in October. 1910, being subsequent to the adoption of the amendment, establishes such qualification.

7. **SAME.** Sec. 4 of the act of the Legislature approved March 28, 1910, prescribes no test whatsoever of a person's qualification to vote under sec. 4a of art. 3 of the Constitution adopted on Aug. 2, 1910.

8. **SAME—Right of Election Officers to Test Voters.** When it appears that a person offering to vote in a city of the first class has not registered since the adoption of the constitutional amendment on August 2, 1910, and was not on January 1, 1866, or at some time prior thereto, entitled to vote under any form of government, and did not on said date reside in some foreign nation, and is not a lineal descendant of such person, the precinct election officers may lawfully require such person to read and write a section of the Constitution before permitting him to vote.

9. **SAME—Offense by Election Officer—Information—Sufficiency.** An information, charging a precinct election inspector in a city of the first class with the offense of defrauding B. of his vote, showed that B. was not entitled to vote under any form of government on January 1, 1866, or at any time prior thereto, did not on that date reside in some foreign nation, and was not the lineal descendant of such a person; it charged that B. made and tendered an affidavit as to his qualifications as prescribed in sec. 4 of the act approved March 28, 1910, in which affidavit was incorporated the additional statement that B. could read and write 'any section of the state Constitution; but that the inspector nevertheless refused to permit B. to vote until the latter should first read and write a section of the Constitution in the inspector's presence. The information did not allege whether B. had registered as an elector, and if so, at what time. **Held,** that the information was defective, in failing to allege that B. had registered as a voter subsequent to the adoption of the constitutional amendment prescribing an educational qualification for voters; and the county attorney having stated in open court that B. was not registered after the adoption of said amendment, and that the information therefore could not be amended in that respect, no offense was alleged or could be alleged, and petitioner is entitled to be discharged.

(Syllabus by the Court.)

*Original Proceeding by Writ of Habeas Corpus.*

Application of A. J. Show for writ of *habeas corpus.* Writ granted and petitioner discharged.

4 Cr.—27

*R. L. Davidson, W. A. Ledbetter,* and *J. C. Stone,* for petitioner.

*M. A. Breckenridge,* County Attorney of Tulsa County, for respondent.

No briefs reached the reporter.

RICHARDSON, JUDGE. The petition herein and the return to the writ issued thereon show that on November 10, 1910, M. A. Breckenridge, county attorney of Tulsa county, filed in the county court of said county an information against the petitioner, A. J. Show, purporting to charge him with violating section 2083 of Snyder's Comp. L. Okla., by defrauding an elector of his vote; which information, omitting the caption, is in words and figures as follows, to wit:

"Be it remembered, that M. A. Breckenridge, County Attorney in and for Tulsa County, State of Oklahoma, who prosecutes in the name and by the authority of the State of Oklahoma, comes now into the County Court of said County this 11th day of November, 1910, and gives the Court to understand and be informed that A. P. Blakemore, then and there being over the age of 21 years, and a native male citizen of the United States, a resident of the State of Oklahoma, for more than one year prior to Nov. 8, 1910, of the County of Tulsa for more than six months prior to Nov. 8, 1910, and a *bona fide* resident of election precinct 18, in the City of Tulsa, Tulsa County, State of Oklahoma for more than thirty days prior to Nov. 8, 1910, did on the 8th day of Nov. 1910, at election precinct number 18, in the City of Tulsa, Tulsa County, Oklahoma, and within the jurisdiction of this Court present himself to vote; by then and there announcing to the clerk of the election his true name, to wit, A. P. Blakemore, giving at the time to the said clerk his street number, to wit, 301 N. Frankfort Street; that thereupon the election inspector, one A. J. Show, challenged the right of the said elector, A. P. Blakemore, to vote, with the intent then and there to defraud the said A. P. Blakemore of his vote in this, to wit: By then and there unlawfully, wilfully and with the intent to defraud the said elector A. P. Blakemore out of his vote, asking the said A. P. Blakemore if he, the said A. P. Blakemore, was on the 1st day of January, 1866, or at any time prior thereto, entitled to vote under any form of gov-

ernment, or whether he, the said A. P. Blakemore, at that time resided in some foreign nation, or was a lineal descendant of such person, and then and there demanded of and required the said A. P. Blakemore to answer said questions, to each of which questions above set forth, said Blakemore answered 'no.' That thereupon said election inspector A. J. Show demanded to know of said A. P. Blakemore if he, the said A. P. Blakemore, could read and write any section of the Constitution of the State of Oklahoma, that the aforesaid A. P. Blakemore then and there stated to said election inspector, that he could both read and write any section of the Constitution of the State of Oklahoma, and then and there the said election inspector demanded and requested of said A. P. Blakemore, that he, the said A. P. Blakemore, then and there, in the presence of him, the said election inspector A. J. Show read and write a section of the Constitution of the State of Oklahoma, offering to said A. P. Blakemore at the time, pen, ink and paper, and a copy of the Constitution of the State of Oklahoma, the number of the section of the Constitution demanded and requested to be read and written being to your informant unknown, that said A. P. Blakemore, then and there offered and presented to said election inspector A. J. Show an affidavit in writing showing that said A. P. Blakemore could read and write any section of the Constitution of the State of Oklahoma, said affidavit being in words and figures as follows:

" 'Tulsa County, ——— Township, 18 Precinct.

" 'State of Oklahoma, County of Tulsa, ss.

" 'I do solemnly swear (1) I am a male citizen of the United States. (2) I am a native of the United States. (3) I have for more than thirty days last past resided in the precinct in which I am now offering to vote, and that I am now a *bona fide* resident of this precinct. (4) I have resided for more than six months last past in the County in which I am now offering to vote. (5) I have resided for more than one year last past in the State of Oklahoma. (6) I am over the age of 21 years. (7) I am not deprived of any of the rights of citizenship by virtue of any conviction of felony. (8) I am not now kept in a poor house or other asylum at public expense. (9) I am not now being kept in a public prison. (10) I am not a lunatic. (11) I am not an officer or soldier in the regular army, or a marine in the navy of the United States. (12) I know of no reason why I am not entitled to vote. (13) I am generally known by the name under which I now desire to vote,

which is, A. P. Blakemore. (14) I have not voted and will not vote in any other precinct in this election. (15) My occupation is a preacher. (16) My residence is 301 Frankfort Street, Tulsa, Oklahoma. (17) During the last six months I have resided at ————. (18) I have removed from ————. (19) That F. R. Williams and C. W. Curley have personal knowledge of my residence in the precinct thirty days and in the county six months, and in the State one year. (20)——————. (21) I am able to read and write any section of the Constitution of the State of Oklahoma. (22) That the writing upon the reverse side hereof is a section of the Constitution of the state of Oklahoma, written in my own hand by me in the presence of N. G. B. Taylor and W. H. Woods, on the 8th day of November, 1910.

"'A. P. BLAKEMORE,

"'Subscribed and sworn to before me this 8th day of November, 1910.                                  'M. L. LYNCH,
(SEAL.)                                                 "'Notary Public.
"'My commission expires July 27, 1912.'

"That said election inspector, A. J. Show, then and there, for the purpose of defrauding said A. P. Blakemore out of his vote, refused to accept the affidavit as true, and then and there refused to allow said A. P. Blakemore to vote unless and until he, the said A. P. Blakemore, should then and there read and write the section of said Constitution before mentioned, in the presence and in the hearing of the said election inspector, A. J. Show, that all of the said acts by the election inspector, A. J. Show, were done with the intent then and there upon the part of him, the said election inpsector, A. J. Show, to defraud the said A. P. Blakemore out of his vote, contrary to the form of the statute in such cases, made and provided, and against the peace and dignity of the state.                            M. A. BRECKENRIDGE,
                                              "County Attorney.

"State of Oklahoma, County of Tulsa, ss.
"A. P. Blakemore, being first duly sworn, on oath says that he has read and knows the contents of the foregoing information, and that the allegations and statements contained therein are true.
                                       "A P. BLAKEMORE,

"Subscribed and sworn to before me this 10th day of November, 1910.                             MINNIE M. THOMAS,
                                               "Notary Public.
"My commission expires February 8th, 1913."

Upon this information the judge of the county court issued a warrant for petitioner's arrest, which the sheriff of the county duly executed. Being in custody thereunder, the petitioner has applied for a writ of *habeas corpus* to the end that he be discharged. His contention is that the information charges no crime, and does not authorize his detention to answer thereto. On the other hand, the respondent insists that the information charges a crime; and that even if it does not, a writ of *habeas corpus* will not lie to determine its sufficiency, since the matter can be raised by appeal or writ of error.

Section 6207 of Snyder's Comp. Laws provides that, "No court or judge shall inquire into the legality of any judgment or process, whereby the party is in custody, or discharge him when the term of commitment has not expired, in either of the cases following * * * 4th. Upon a warrant or commitment issued from the district court, or any other court of competent jurisdiction, upon an indictment or information." And the section following provides that, "No person shall be discharged from an order of commitment issued by any judicial or peace officer for want of bail, or in cases not bailable, on account of any *defect in the charge* or process, or for alleged want of probable cause * * *" This statute was construed by the Supreme Court of the Territory of Oklahoma in the case entitled *In re Potswald,* 5 Okla. 789, 50 Pac. 139, and it was there held that the statute was merely declaratory of the common law, and that the court has power under it to inquire into and determine the validity of a process upon which a party is restrained of his liberty, and that the efficiency of the writ could not be so impaired by statute as to take away this power. It goes without saying that the writ cannot be substituted for an appeal or writ of error for the correction of mere errors, irregularities or deficiencies, and that unless the commitment or warrant under which a party is held is void and not merely voidable, the writ will not lie. The general rule is that the writ may not be used, either before or after conviction, to test the sufficiency of the indictment or information; but this

is subject to the qualification recognized in almost every juris-
diction, that where the accusation is not merely defective or tech-
nically insufficient, not merely demurrable or subject to a motion
to quash or set aside, but is elementally and fundamentally defec-
tive in substance, so that it charges a crime in no manner or form
and by no intendment, a party in custody to answer thereto, or
after conviction thereon, will be discharged on *habeas corpus*. It
was stated by Chief Baron Gilbert that, "If the commitment be
against law, as being made by one who had no jurisdiction of the
cause, *or for a matter for which by law no man ought to be pun-
ished,* the court are to discharge." Bac. Abr., Hab. Corp., B. 10.
And Lord Hale said: "If it appear by the return of the writ that
the party be wrongfully committed, or by one that hath not juris-
diction, *or for a cause for which a man ought not to be imprisoned,*
he shall be discharged or bailed." 2 Hale's H. P. C. 144. In
*Pereles v. Weil, U. S. Marshal,* 157 Fed. 419, Judge Sanborn used
this language:

"If the indictment is not sufficient on its face to show that an
offense against the United States has been committed, the defend-
ants should be discharged. If the indictment is good in substance,
lacking only some technical averment of time or place or circum-
stance to render it free from technical defects, the order for re-
moval will be issued if the evidence supplies such defects, and
shows probable cause to believe defendants guilty."

Judge Dillon held likewise in *In re Buell,* 3 Dill. 116. See,
also, *In re Farez,* 7 Blatchf. 34; *In re Doig,* 4 Fed. 193; *In re
Corning et al.,* 51 Fed. 205; *In re Huntington,* 68 Fed. 881;
*In re Wolf,* 27 Fed. 606; *In re Barber,* 75 Fed. 980; *In re Greene,*
52 Fed. 104; *United States v. Conners,* 111 Fed. 734. The Su-
preme Court of California has passed upon this question in numer-
ous cases. In *Ex parte Corryell,* 22 Cal. 179, the syllabus is as
follows:

"Where, upon application for discharge by *habeas corpus,* it
appears that the prisoner by virtue of a commitment in due form,
is detained to answer an indictment pending in a criminal court,
the court or judge hearing the application may proceed to inquire

whether the indictment charges any offense known to the law; and upon determining that it does not, may discharge the prisoner. The statement in an indictment of some offense known to the law is essential to the jurisdiction of the court, and is, therefore, under well settled rules, a fact which may be inquired into upon *habeas corpus.*"

In that case it was objected that the proceeding by *habeas corpus* was not proper; that the commitment emanated from a court of competent jurisdiction, and that its action in the premises was not subject to review on *habeas corpus.* To this the Supreme Court said:

"The vice of the objection is that it assumes that the court had jurisdiction, whereas the fact of jurisdiction is the very fact which the petitioner disputes, alleging that the offense charged is one not known to the law. The court derives its jurisdiction from the law, and its jurisdiction extends to such matters as the law makes criminal, and none other, and when it attempts to imprison for an offense to which no criminality is attached, it acts beyond its jurisdiction."

Again, in *Ex parte Kearney,* 55 Cal. 212, the court discharged the prisoner, saying:

"This is not the case of a complaint inartificially drawn, which intimates the existence of the facts necessary to the constitution of the offense, or even of an attempted statement, insufficient, but indicating a purpose to declare on the essential facts. It is a total failure to allege any cause of action, and however objectionable the conduct imputed to the petitioner, he is no more, in the eye of the law, charged by complaint with any crime, than if the paper had ascribed to him the most innocent of deeds."

To the same effect are *Ex p. McNulty,* 77 Cal. 164; *Ex p. Sternes,* 82 Cal. 245, and *Ex p. Maier,* 103 Cal. 476. And Church on *Habeas Corpus* (2d Ed.) sec. 245, lays down the same rule. He says:

"While inquiry cannot extend beyond an indictment into fields of unknown facts, the indictment itself may be examined upon *habeas corpus,* although it appears that the defendant has been detained to answer it under a commitment in due form. The court, or judge of the court wherein such indictment is pending, may proceed to inquire whether it charges any offense known to the law,

for this goes to the jurisdiction, which is always a proper subject of inquiry in a proceeding of this character. If such were not the case, the simple warrant of a court, however arbitrary it might be, would constitute a complete answer to the writ. An indictment must contain the statement of an offense known to the law, and, under the rules well settled by judicial decision that this may be inquired into, if the court or judge determines that it does not, the prisoner must be discharged as a matter of right, particularly in those states where a statute provides that he shall be discharged 'when the process, though proper in form, has been issued in a case not allowed by law.' "

And in the notes the author adds the following:

"A court can punish for no act except what is made criminal by law; it has no power to punish for something unknown to the law. It has jurisdiction to try and punish only for certain offenses, and those must be made criminal by law. If an indictment shows no offense, there is no criminality shown, and there is nothing of which a court can take jurisdiction. And if a court have no jurisdiction its action is void—a condition which it is the very object of *habeas corpus* to cure. Voidable informalities or irregularities are not reached by it, but fatal jurisdictional defects are ever within its range; either before or after indictment, and even after conviction and judgment."

And the Supreme Court of the United States, in *Greene v. Henkle, U. S. Marshal,* 183 U. S. 249, 46 L. Ed. 177, 22 Sup. Ct. Rep. 218, said:

"We do not, however, hold that when an indictment charges no offense against the laws of the United States, and the evidence fails to show any, or if it appears that the offense charged was not committed or triable in the district to which the removal is sought, that the court would be justified in ordering the removal, and thus subjecting the defendant to the necessity of making such a defense in the court where the indictment was found. *In that case there would be no jurisdiction to commit nor any to order the removal of the prisoner.*"

The rule announced by Church on *Habeas Corpus* and by the Supreme Court of California is fully sustained in *Ex p. Prince,* 27 Fla. 196; *Ex p. Bailey,* 39 Fla. 734; *In re Farrell,* 36 Mont. 254; *In re Barker,* 56 Vt. 14; *State v. Johns,* 143 Ala. 61; *Ex p. Gold-*

*man* (Cal. App.) 88 Pac. 819; *Ex p. Johnson,* 6 Cal. App. 734, 93 Pac. 199; and *Ex p. Rickey* (Nev.) 100 Pac. 134.

Our statutes define an indictment as "an accusation in writing, presented by a grand jury to a competent court, *charging a person with a public offense."* Sec. 6674, Snyder's Comp. L. Okla. And an information is defined to be *"a written accusation of crime* preferred by the district attorney or other public prosecuting officer without the intervention of a grand jury." 22 Cyc. 186. And it would seem that an accusation which in no manner charges a *public offense,* which accuses one of an act not a *crime,* can be neither an indictment nor an information. And it is uniformly held that in the absence of a formal and sufficient accusation the court acquires no jurisdiction whatever, and if it assumes jurisdiction, a trial and conviction are a nullity. 22 Cyc. p. 171, and cases there cited. We think that the foregoing is the law, and that a person in custody under a purported indictment or information which wholly fails to charge a crime may be released therefrom by writ of *habeas corpus.* But it should be clearly understood that this rule has no application to mere technical defects or omissions or to mere matters of form. It must clearly appear therefrom that the act intended to be charged was not a crime. If from the accusation the court can deduce that the prosecutor intended to charge an act which is a crime, *habeas corpus* will not lie, however defectively the act is described.

Does this information charge a crime? The answer to this question involves a consideration and construction of sec. 4 of the act approved March 28, 1910 (Session Laws 1910, p. 242), and of sec. 4a of art. 3 of the Constitution, being an amendment adopted by the people at the election held on August 2, 1910. Section 4 of the session law in question reads as follows:

"Section 4. Any elector shall, on presenting himself to vote, announce to the clerk of the election his name, and in towns and cities of the first class shall give his street number. Any election inspector or challenger, may challenge the right of any voter to vote. Any person so challenged shall retire from the enclosure and not be entitled to vote unless he makes an affidavit in writing

that he is a qualified and legal voter of the precinct, also his name, residence, occupation, place or places of residence during the six months prior to the election, with the date of any removal within that time, and the names of two persons who have personal knowledge of his residence in the precinct thirty days; and the county six months and the state one year; and if registered. He shall then be allowed to vote unless the election inspector or challenger makes affidavit in writing that he knows or is informed and verily believes that the person offering to vote is not a legal voter of the precinct; and the person offering to shall not thereafter be allowed to vote unless one qualified elector of the precinct who has been a freeholder and householder in the precinct for at least one year next preceding such election shall make affidavit in writing that he has personal knowledge of such person offering to vote being a legal voter at the precinct. The affidavit of the person challenged shall be in the following form:

" 'State of Oklahoma, County of.................................ss.

" 'I do solemnly swear (or affirm) (1) I am a male citizen of the United States. (2) I am a native of the United States. (3) I have for more than thirty days last past resided in the precinct in which I am now offering to vote, and that I am now a *bona fide* resident of this precinct. (4) I have resided for more than six months last past in the county in which I am now offering to vote. (5) I have resided for more than one year last past in the State of Oklahoma. (6) I am over the age of 21 years. (7) I am not deprived of any rights of citizenship by virtue of any conviction of a felony. (8) I am not now kept in a poorhouse or other asylum at public expense. (9) I am not now kept in a public prison. (10) I am not a lunatic. (11) I am not an officer or soldier in the regular army, or a marine in the navy of the United States. (12) I know of no reason why I am not entitled to vote. (13) I am generally known by the name under which I now desire to vote, which is................................................. (14) I have not voted and will not vote in any other precinct in this election. (15) My occupation is.............................. (16) My residence is ..................................(if in city or town give street and number). (17) During the last six months I have resided at................................ (18) I have removed from:...............................to.................................. on the following date. (19) That............................and............................ have personal knowledge of my residence in the precinct thirty days and in the county six months, and the state one year.

" 'Subscribed and sworn to before me this............................................day of.............................19............

" ..................................................................... ,

"The inspector shall file such affidavit and safely keep the same until it is delivered as hereinafter· provided, to the county election board.

"The other affidavits herein referred to shall be in the following form:

" 'State of Oklahoma, County of......................................ss.

" 'I swear that I know, or am informed and believe, that ..........................................now offering to vote, is not a legal voter in this precinct.

" .................................................. . ...... ,

" 'Subscribed and sworn to before me this..................................day of ......................................, 19............

" .................................................. . ...... ,

" 'State of Oklahoma, County of......................................ss.

" 'I do solemnly swear (or affirm) that I am a qualified elector of this precinct; that I have been a freeholder and householder in this precinct for one year next·preceding this election; that ............................................ who now desires to vote, has resided in this state for one year immediately preceding this election; that he has resided in this county six months, and in this precinct thirty days, at........................................; that he is now a *bona fide* resident of this precinct and a legal voter therein. These facts I know of.my own personal knowledge.

" ...................................................:..................

" 'Subscribed and sworn to before me this..................................day of ......................................, 19............

" .................................................... ,

"Should the person challenged not be a native of the United States, unless he be of Indian descent, he may strike out the avowal number '2' in the affidavit to be by him subscribed. If he be of Indian descent, he must be a native of the United States to be entitled to vote. Should the person challenged be, at the time, confined in a poorhouse, or other asylum at public expense, he may still be entitled to subscribe to said affidavit and vote, provided he will strike out of avowal Number '8' as arranged herein, the word 'not' and add at the close of such avowal with pen and ink the words· 'as a soldier of the War of 1861-65 between the States.'

Should the person challenged be an officer in the regular army, or a marine in the navy of the United States, enlisted from this state, he may strike out the word 'not' in avowal number '11' and add at the close of the avowal the words 'But I enlisted from this state,' and strike out avowal number '18' in case he has not removed as therein provided.

"The foregoing instructions, following the above jurat, shall be printed upon the affidavit in bold type, and immediately following the jurat with an index hand at the beginning of each paragraph. When such affidavits have been signed and sworn to, the clerk shall provide the elector with a ballot."

The amendment to the Constitution adopted on August 2, 1910, is in the following language:

"Section 4a. No person shall be registered as an elector of this state, or be allowed to vote in any election held herein, unless he be able to read and write any section of the Constitution of the State of Oklahoma; but no person who was, on January 1st, 1866, or at any time prior thereto, entitled to vote under any form of government, or who at that time resided in some foreign nation, and no lineal descendant of such person, shall be denied the right to register and vote because of his inability to so·read and write sections of such Constitution.

"Precinct election inspectors having in charge the registration of electors shall enforce the provisions of this section at the time of registration, provided registration be required. Should registration be dispensed with, the provisions of this section shall be enforced by the precinct election officers when electors apply for ballots to vote."

This amendment was recently considered by the Supreme Court of this state in the case of *Joseph Atwater v. W. T. Hassett et al.,* 27 Okla. —, 111 Pac. 802, and it was there held that the same was constitutional and valid; and with this conclusion we agree. The questions, therefore, are, (1) whether the amendment is self-executing, and (2) whether the affidavit provided for in sec. 4 of the act approved March 28, 1910, is the ultimate test of one's qualification to vote under the amendment. We think the amendment is self-executing. It is prohibitive in character, and designates the person or persons who shall enforce the prohibition. The substance of the amendment is that no person, with certain

exceptions, shall be registered as an elector of this state, or be allowed to vote in any election held herein, unless he is able to read and write any section of the state Constitution; and precinct election inspectors are commanded to enforce this inhibition at the time of registration, if registration be required, and if registration be not required, precinct election officers are required to enforce it when electors apply for ballots to vote. It is generally held that constitutional provisions merely prohibitory in character are self-executing, even though legislation with respect thereto may be desirable or beneficial, and that the officer or officers, board or tribunal before whom the matter may arise should enforce it. *Ex parte McNaught,* 23 Okla. 285, 1 Okla. Cr. 260, 100 Pac. 27; *Ex parte Cain,* 20 Okla. 125, 1 Okla. Cr. 7, 93 Pac. 975; *Hickman v. Kansas City,* 120 Mo. 116, 25 S. W. 225, 23 L. R. A. 662, 41 Am. St. Rep. 684; *Householder v. Kansas City,* 83 Mo. 495; *Synod of Dakota v. South Dakota,* 2 S. D. 366, 50 N. W. 632, 14 L. R. A. 421; *Washingtonian Home of Chicago v. City of Chicago,* 157 Ill. 414, 41 N. E. 893, 27 L. R. A. 802; *Law v. People,* 87 Ill. 385; *State v. Woodward,* 89 Ind. 110, 46 Am. Rep. 160; *De Turk v. Commonwealth,* 129 Pa. 151, 18 Atl. 757, 5 L. R. A. 853, 15 Am. St. Rep. 705; *American Union Tel. Co. v. Western Union Tel. Co.,* 67 Ala. 26, 42 Am. Rep. 90; *Oakland Paving Co. v. Hilton,* 69 Cal. 483, 11 Pac. 3; *Donahue v. Graham,* 61 Cal. 276; *McDonald v. Patterson,* 54 Cal. 246; *Whitman v. National Bank of Oxford,* 176 U. S. 562, 44 L. Ed. 590. Here the amendment itself provides that the precinct inspector shall enforce the provision if registration is required, and that the precinct election officers, of whom the inspector is one, shall do so at the time of voting, if registration is not required. All that is necessary for its enforcement is to refuse to register such disqualified person if registration is required, or refuse to deliver him a ballot or to receive and deposit in the ballot box a vote from him where registration is not required. Furthermore, as to registration, sec. 13, art. VIII, chap. 31, Session Laws 1907-8, provides that if any citizen's right to registration is challenged, the inspector shall "make such investiga-

tion as he deems essential, and decide the question of such person's qualifications as an elector, and should he be of opinion that such person is not a qualified elector, he shall not issue to him a certificate of registration." It will be seen from an examination of the constitutional amendment that if registration is required, then the provision in question is to be enforced by the precinct election inspector having the registration in charge and at the time of registering the elector. And it is only when registration is dispensed with that it is to be enforced by precinct election officers at the time of the elector's offering to vote.

The Legislature of 1907-08 passed an act providing for registration in the various cities of the first class in this state. This act was approved May 29, 1908. (Art. VIII, chap 31, Session Laws 1907-8, page 352.) Subsequently the Legislature of 1909 passed an act known as Senate Bill No. 179, approved March 27, 1909, amending art. VIII, chap. 31, Session Laws 1907-8, in regard to registration, and making provisions for the registration of all voters in all precincts in the state. (Session Laws 1909, page 258.) This act did not carry the emergency clause, however, and before the expiration of ninety days after the adjournment of the Legislature the referendum was invoked against it, and before it was voted upon by the people it was repealed by chapter 112 of the Session Laws of 1910. The act of 1909 therefore never became a law. Also the Legislature of this state passed, without the emergency clause, an act approved March 26, 1910, requiring registration in every precinct of the state; but the referendum was invoked with respect to it also; it was voted upon at the election on Nov. 8, 1910, and was defeated. It therefore never became a law; and consequently art. VIII, chap. 31 of the Session Laws 1907-8 has never been repealed, and is in force to this day. Section 2 of said article provides that registration shall begin on the first Monday of July preceding each biennial primary election to be held in August, and shall continue until nine o'clock p. m. on the last Saturday night of said month of July. Section 27 of said article provides that during the last week of the month of October pre-

ceding the general election to be held in November the inspector of election shall open and keep open the registration books for the registration of electors in their respective precincts who shall have become legal voters of such precinct subsequent to the primary election in August, or who will be ·entitled to vote at the general election in November. This is the only provision for registration of any kind to be had after July. Section 1 of said article VIII provides that no elector shall be allowed to vote in any election held in such cities unless he has been registered. Section 15 of said article provides that a certificate of registration shall entitle the voter named therein to vote provided it is regular in form as compared with the carbon copy in the hands of the inspector of the election. And section 18 provides that certificates of registration shall entitle electors who rightfully hold same to vote at all elections held after the 'date of said registration, and before the next biennial registration, whether such election be primary or general. But section 4 of the act approved March 28, 1910 (Session Laws 1910, p. 242), authorizes the challenge of any voter, without regard to whether he was registered, and provides that when challenged he may vote only upon making the affidavit or affidavits therein specified. And construing art. VIII of chap. 31, Session Laws 1907-8, together with sec. 4 of the act approved March 28, 1910, it would seem that after the latter act became effective, registration provided for in the former act was only *prima facie* and not conclusive evidence of the possession of those qualifications mentioned in the latter act; and that notwithstanding such registration a person might. be challenged, and when properly challenged, should be refused the right to vote unless he established the qualifications mentioned in the latter act in the manner therein specified.

The constitutional amendment having been voted upon and adopted on August 2, 1910, after the registration in July, and having prescribed an additional qualification and disqualification for voters, and one which previous registration did not and could not determine, it is plain that as to all except persons who were

registered in October as provided in sec. 27, art. 8, chap. 31, Session Laws 1907-8, registration was dispensed with in the general election in November as determining a person's educational qualification. That is to say, registration was still required in cities of the first class, but registration made before the adoption of the amendment was no evidence of the possession of the qualification prescribed by the amendment; and as to this qualification any voter· who was not registered after the adoption of the· amendment, that is, in October, stood in the same situation as though he had not registered at all. Those who registered in October, such registration being subsequent to the adoption of the amendment, so far as the educational test is concerned, were entitled to vote under and by virtue of their certificate of registration. But those who did not register after the adoption of the amendment, and who were not on January 1, 1866, or at some time prior thereto, entitled to vote under some form of government, or who did not at that time reside in some foreign nation, or who were not lineal descendants of such person, so far as the educational test was concerned, were not entitled to vote under and by virtue of their registration in July, and were not entitled to vote at all unless they could read and write any section of the state Constitution.

The information in this case does not allege whether A. P. Blakemore had registered as a voter, and if so, whether such registration was in July or in October. The county court of Tulsa County and this court will take judicial notice that Tulsa is a city of the first class (*Ft. Scott v. Elliott,* 68 Kan. 805, 74 Pac. 609; *City Council of Montgomery v. Wright,* 72 Ala. 411, 47 Am. Rep. 422; *Goodwin v. Appleton,* 22 Me. 453; *Woodward v. Chicago & Northwestern R. Co.,* 21 Wis. 309; *Swain v. Comstock,* 18 Wis. 463; *Union Pac. R. Co. v. Montgomery,* 49 Neb. 429, 68 N. W. 619; *Hornberger v. State,* 47 Neb. 40; *Stratton v. Oregon City,* 35 Oreg. 409, 60 Pac. 905; *People v. Wong Wang,* 92 Cal. 277, 28 Pac. 270); and under section 6706 of Snyder's Comp. Laws the averment of that fact in the information is not necessary. But with respect to Blakemore's registration, the averment and proof

thereof are material and important. For if Blakemore did not register in October, then by the terms of the amendment in question its provision was to be enforced as to him by the election officers at the polls. But if he was registered in October, then under the amendment, in the absence of fraud in the registration, we think that established his qualification so far as the educational test was concerned; and if a fraudulent registration was relied upon as a defense, the burden would be on the defendant upon a trial under an information of this kind to prove the fraudulent registration. As to this matter, the question whether Blakemore registered in October was raised in the hearing herein, and in answer to a question propounded by the court, the county attorney of Tulsa County stated that Blakemore registered in July and not thereafter, and that the information could not be truthfully amended so as to allege that he had registered since the adoption of the amendment.

We do not think that section 4 of the act approved March 28, 1910, prescribes any test whatsoever of one's qualification to vote under the constitutional amendment. The amendment is a later enactment. The qualification therein prescribed is not included in the voter's affidavit set out in section 4 of the act mentioned, and the affidavit relates only to the matters specified therein. The form of the affidavits is statutory, and the statute expressly states what alterations may be made therein and what additions may be made thereto, and all others are thereby excluded. The affidavit shows all matters which may be proved thereby. And when such affidavit has been made, and if controverted, has been supported by the affidavit of one qualified elector and freeholder, as to the qualifications to which the affidavit relates, the election officers are precluded thereby. The vote may not be a legal one, but the election officers have no power to reject it because of the want of any qualification which the affidavits in their statutory form show the party to possess. Under the statute, the making and filing of the prescribed affidavits, and not the person's qualification in fact, entitles him to vote. This is not true of the constitutional provision.

4 Cr.—28

Under that provision, it is the fact of the possession of the qualification therein prescribed, and not the making and filing of an affidavit thereof, which entitles to vote. No person, with certain exceptions, shall be registered as an elector or be allowed to vote in any election, unless he be able to read and write any section of the Constitution, is the language used; not that such person shall not be allowed to vote until he makes affidavit that he can read and write any section of the Constitution. And we have no doubt that the people, in initiating and adopting this constitutional amendment, did not contemplate or intend that the qualifications therein prescribed should be established, and that indisputably and conclusively, solely by the affidavits prescribed in section 4 of the act approved March 28, 1910.

We think, under the constitutional provision, the election officers, when it appears that the person offering to vote was not registered in October, and was not on January 1, 1866, or at some time prior thereto, entitled to vote under any form of government, and did not on said date reside in some foreign nation, and is not the lineal descendant of such a person, in the absence of further legislation, may lawfully apply to such person any reasonable test as to his ability to read and write a section of the Constitution. If the election officers know that such person possesses the requisite qualifications they need not apply any test. If they are satisfied from the person's affidavit that he can read and write any section of the Constitution, they may act upon that and permit him to vote. If they are not satisfied therefrom, they may lawfully apply the ultimate test of requiring such person in their presence to read and write a section of the Constitution of not unreasonable length. Beyond this they cannot go. And if they apply this test, it is their duty in good faith to give the person an opportunity of fulfilling it, and when he has reasonably fulfilled the requirement, to permit him to vote. Such a test itself is not unreasonable. It affords the highest, best and ultimate proof of the possession or want of the qualification imposed. The elector cannot prescribe his own method of proving his possession of this qualification,

so as to preclude the election officers from denying, disputing or rejecting his proffered affidavit and applying to him the ultimate test contemplated by the amendment. If he could, it would be easy to practically nullify the amendment.

Taking the facts charged in this information as true, it appears that A. P. Blakemore was not himself entitled to vote under any form of government on January 1, 1866, and did not at that time reside in some foreign nation, and was not a lineal descendant of such a person. Therefore unless he could read and write any section of the Constitution, he was not entitled to vote at the election in question. And since he did not register in October, it was no offense for the election inspector to require that he first demonstrate his ability to read and write a section of the Constitution before permitting him to vote. If after demanding the test the inspector had refused him reasonable opportunity to fulfill it, or after fulfilling it the inspector had still denied him the right to vote, a different question would be presented; but here the offense is alleged to consist in the fact that the petitioner refused to accept the tendered affidavit as conclusively establishing Blakemore's educational qualification, and refused to allow him to vote only until he should read and write in petitioner's presence a section of the Constitution. And, as Blakemore was not registered in October, this was no offense. On the other hand, if he had registered in October, and duly presented his certificate of registration to the election officials when he applied to vote, in the absence of fraud in his registration, of which there is no legal presumption, he would have been entitled to vote; and if, under those circumstances, the petitioner had insisted upon applying to him the test alleged, and refused to permit him to vote until he should fulfill that test, intending under color and pretense of such test to defraud Blakemore of his right to vote, a right which, so far as the educational test was concerned, had already been determined at the time and by the person designated by the amendment to determine it, such act would have constituted an offense. The information fails to allege those facts. And since the county attorney

states that he cannot truthfully allege them, their omission is not a mere "defect in the charge" for which the court, by section 6208 of Snyder's Comp. Laws, is forbidden to discharge on *habeas corpus.* As these necessary averments are wanting and cannot be supplied, the petitioner is entitled to be discharged, and it is so ordered.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.