DR. HÉCTOR HOYOS NAPOLEONI ET UX., Petitioners, v. SUPERIOR COURT OF PUERTO RICO, PONCE PART, HÉCTOR RUIZ SOMOHANO, JUDGE, Respondent.

No. 2413. Submitted April 10, 1958.—Decided April 11, 1958.

*Héctor Lugo Bougal, William Morales Torres, Carlos J. Irizarry Yunqué, Enrique González Velázquez, Julio Viera Morales,* and *Leopoldo Tormes García* for petitioners. *J. B. Fernández Badillo, Attorney General, Arturo Estrella, Assistant Attorney General,* and *Alfredo Archilla Guenard, Fiscal of the Supreme Court,* for respondent.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.*

Dr. Héctor A. Hoyos Napoleoni and his wife, Ana María Torres, filed a petition for habeas corpus in the Superior Court, Ponce Part, addressed to Hon. Ramón Gadea Picó, a judge of that court.

They alleged in the petition that they were illegally imprisoned and deprived of their liberty under the custody of the warden of the district jail of Ponce by virtue of a bench warrant issued by Hon. Miguel A. Velázquez, Superior Judge of Puerto Rico, charging them with the commission of the offense of murder on the person of Vicenta Ortiz Vives; that their imprisonment was illegal because none of the petitioners had participated in any manner whatsoever in anything that had occurred to Vicenta Ortiz Vives, and much less in her death, and that there was no proof at law to justify that petitioners or anyone of them be deprived of their liberty; and in case any proof did exist, it was insufficient to deprive the petitioners of their liberty. They alleged, further, that the $10,000 bail bond fixed to each petitioner was excessive.

The writ was issued and the case set for hearing on February 6, 1958. The day before the hearing the petitioners requested that Luis Ortiz Colón be summoned to appear at the hearing of the case. Judge Gadea Picó issued the order. On February 5, the petitioners filed two other motions requesting that other witnesses be summoned. The prosecut-

---

* This opinion was delivered on July 31, 1958.

ing attorneys then filed written objections to the summoning of the witnesses. Hon. José Dávila Ortiz, administrative judge of the Ponce Part, entered an order setting aside the subpoena issued to witness Luis Ortiz Colón, and set February 6 for the hearing of the motions made by the petitioners for the summoning of witnesses.

On that day the motions were argued and they were denied by the judge. Before the prosecuting attorneys presented evidence in support of the existence of probable cause for the arrest and detention of the petitioners, the latter moved for leave to file a supplementary allegation to their petition, the essential part of which reads as follows:

"That according to the information and belief of these petitioners, any statements which the prosecuting attorneys may have in their possession which might incriminate the accuseds and which, I mean the petitioners, may lead to their imprisonment, have been obtained from the declarants by coercion, flattery and promises, intimidation, violence, threats, and fraud on the part of the investigating officers; that is, that they resorted to simulation, deceit, making them believe facts which has not occurred and insinuating the way and manner in which they should testify."

The court ordered that the said supplementary allegation be attached to the record "for all pertinent legal purposes."

The prosecuting attorneys next introduced their evidence, which consisted of the written sworn statements of the following witnesses: Dr. Edwin Rivera, Francisca Vives Ruber, Ramón Alberto Albizu Zambrana, Juan A. Zapata, Cándido Garay Ballonas, and Luis Ortiz Colón.

Dr. Edwin Rivera testified that on January 13, 1958 and by order of prosecuting attorney Fernando Pérez Regis, he performed an autopsy on the body of Vicenta Ortiz Vives, having concluded that the cause of the death was asphyxia by strangulation.

Francisca Vives Ruber testified that she is the mother of Vicenta Ortiz; that the last time she saw her daughter

was on January 10, 1958, about 10:30 a.m., and that in the evening of the 12th day of the same month and year she identified the body of her daughter, Vicenta Ortiz Vives, in the Ponce District Hospital.

Ramón Alberto Albizu Zambrana testified that on January 12, 1958, between 6:00 and 6:30 p.m., he and his brother Gustavo discovered a woman lying in a prone position in an irrigation canal in Barrio Hoyo; that they went immediately for policeman Zapata.

Policeman Zapata testified that, upon being notified by Albizu brothers of the occurrence, he went to Hoyo place in the ward of Coto Laurel of Ponce and by the side of a lake he found the body of a young girl in an irrigation canal; that when they removed the body they noticed that on the neck were tied a belt and a narrow strip of cloth; that they removed the body to the Ponce District Hospital, where it was identified by Francisca Vives Ruber as that of her daughter Vicenta Ortiz Vives.

Cándido Garay Ballonas testified that in the evening of January 10, 1958, about half past eight, while he was standing in front of Café Central in Plaza Delicias of Ponce, he saw Dr. Hoyos Napoleoni arrive in his Lincoln car and park in front of Café Central; that he called Luis Ortiz, who got in the doctor's car, and that they both left in the car.

When the prosecuting attorneys' offered the sworn statement of Luis Ortiz Colón, the petitioners objected vigorously to its admission alleging that that statement was false and apocryphal and had been obtained by intimidation, threats, and psychological coercion. They announced that witness Luis Ortiz Colón was present and urged the court to hear his oral testimony. They alleged that Luis Ortiz Colón was going to testify that the statement which he made to the prosecuting attorneys was false.

The court denied the petitioners' request and admitted Luis Ortiz Colón's written statement. This witness testified that on January 10, 1958, Dr. Hoyos Napoleoni called for him

in his Lincoln car at Línea Kofresí, where the witness works, and asked him a favor; that he then took him to the Juana Díaz road, told him about an accident which he had had, and asked him to remove something which was inside the car; that the witness agreed and he then sent him to get a car; that he went to Línea Kofresí and took a green Dodge car, license plate No. P-48-813, and went to Dr. Hoyo's house; that Dr. Hoyos told him to leave the car and to drive with him in the Lincoln car; then they drove around, took some beer, and returned to Dr. Hoyo's house; his wife, Ana Torres, was waiting on the porch and Dr. Hoyos called her and she got in the witness' car; Dr. Hoyos then told him to drive along the Juana Díaz road and led him to an uninhabited place in the ward of Coto Laurel of Ponce where there is a lake, arriving there about 11:00 p.m.; that Dr. Hoyos and his wife got off, opened the right door of the back seat of the car and took out the body of a woman, which thereafter was found to be that of Vicenta Ortiz Vives, and threw it into an irrigation canal and left it there; that the witness engaged in an argument with them because until then he did not know that the favor asked of him was to remove a body to that place; that the witness got very nervous, and Dr. Hoyos and his wife kept telling him not to worry, that nothing would happen to him because it would not be found out. That they returned to Ponce and he left the spouses at their home; that on February 3 he explained what had happened to the prosecuting attorneys, and that he had said nothing before that time because he was afraid they would accuse him.

At the close of the state's evidence the court granted a term to the parties to file memoranda. In the meantime the petitioners appealed to this Court and we issued a writ of certiorari to review the order of the lower court, denying to petitioners an opportunity to introduce the oral testimony of Luis Ortiz Colón.

On April 11, 1958, we issued an order setting aside the order appealed from and remanding the case for further pro-

ceedings. The grounds of that order would be set out more fully in the opinion the Court would render and file of record at the proper time. We now turn to deliver that opinion.

■■ As grounds of a procedural character in support of the lower court's refusal to admit the oral testimony of Luis Ortiz Colón, the *Fiscal* of this Court alleges that the petitioners did not file a traverse to the return of the writ, and that "when the respondent judge entered the order under review, the only point which he was bound to consider at law was the 'return.'" After stating that the allegation of excessive bail was waived, the *Fiscal* said: "Therefore, the petition was based solely on the lack of probable cause; hence, the doctrine announced in *Guadalupe v. Bravo, Warden*, 71 P.R.R. 913 (1950), was strictly applicable, and the respondent judge applied it correctly in holding that in a proceeding of this nature the petitioners have no right to confront the witnesses whose sworn statements support the probable cause."

Section 480 of the Code of Criminal Procedure (34 L.P.R.A. § 1752) provides:

"The party brought before the court or judge, on the return of the writ, may deny or controvert any of the material facts or matters set forth in the return, or except to the sufficiency thereof, or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge. The court or judge must thereupon proceed in a summary way to hear such proof as may be produced against such imprisonment or detention, or in favor of the same, and to dispose of such party as the justice of the case may require, and have full power and authority to require and compel the attendance of witnesses, by process of subpoena and attachment, and to do and perform all other acts and things necessary to a full and fair hearing and determination of the case." [1]

It is true that under that section, as under its counterpart in the California statute,[2] the function of a petition in a habeas corpus proceeding is to insure or obtain the issuance

---

[1] Because of errors in the translation of this section, the English text is copied as n. 1 in the original opinion rendered in Spanish.

[2] Section 1484 of the Penal Code of California.

of the writ by the judge or court, and that once the writ has been issued the petition has accomplished all its purposes. The writ requires a written return from the person against whom it is issued. This return is the allegation which corresponds to the complaint in civil actions. *Vázquez v. Díaz*, 63 P.R.R. 838, 841. The party brought before the court or judge, on the return of the writ, may file a traverse denying or controverting any of the material facts or matters set forth in the return, or except to the sufficiency thereof, or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge. This traverse is the allegation which joins the issue in the case. If the return is not attacked in the stated manner by the corresponding traverse, it is considered accepted, and if it is sufficient at law, the writ must be denied and the prisoner recommitted. The petition may be treated as a traverse to the writ when it alleges the essential facts in support of petitioner's case, by stipulation of the parties and the approval of the court. If no stipulation is made, the petition need not be considered in settling the controversy involved in the proceeding.[3] *In re Martha*, 122 Cal. App. 2d 654 (1954), 265 P.2d 527; *In re Masching*, 41 Cal.2d 530, 261 P.2d 251 (1953); *In re Egan*, 24 Cal.2d 323 (1944); *In re De León*, 59 Cal. App.2d 510 (1943); *In re Silverstein*, 52 Cal. App. 2d 725 (1942); *In re Gutiérrez*, 1 Cal. App.2d

---

[3] Where the petition alleges lack of reasonable or probable cause for the imprisonment or detention of the petitioner, it is the duty of the court or judge before whom the proceeding is heard to look to the bench warrant by virtue of which the petitioner is arrested to determine whether there is prima facie evidence to establish the existence of reasonable or probable cause for the detention, irrespective of whether or not a traverse to the return has been filed. See §§ 480, 481, and 483 of the Code of Criminal Procedure (34 L.P.R.A. §§ 1752, 1753, and 1755 respectively); *Ex parte Napoleoni*, 27 P.R.R. 788. This has been the uniform practice in the Puerto Rican courts. See *González v. Warden*, 79 P.R.R. 41 (1956); *Santos v. Berdecía*, 73 P.R.R. 713 (1952); *Guadalupe v. Bravo, Warden*, 71 P.R.R. 913 (1950); *González v. Rivera, Warden*, 71 P.R.R. 735, 736 (1950); *Rodríguez v. Pagán*, 67 P.R.R. 321, 322 (1947); *Vázquez v. Díaz*, 63 P.R.R. 838 (1944); *Ex parte Ferrá*, 61 P.R.R. 389 (1943); *Ríos v. Lafosse*, 59 P.R.R. 510 (1941); *Fernández v. Martínez*, 59 P.R.R. 548

281 (1934); *In re O'Leary*, 127 Cal. App. 183 (1932); *In re Delgado*, 107 Cal. App. 688 (1930); *In re Application of O'Connor*, 80 Cal. App. 647 (1927); *In re Collins*, 151 Cal. 340 (1907); *In re Smith*, 143 Cal. 368 (1904); *In re Koll*, 60 Cal. App. 193; *In re Larabee*, 131 Cal. App. 261.

But the prosecuting attorney is not right as to the procedural question raised before us. The amendment to the petition which we have copied above, allowed by the judge at the hearing of the return on the writ, was clearly a traverse to the return. The judge was informed both in writing and orally of the falsity of the only testimony which connected the petitioners with the offense charged. It is true that when the judge decided the motions for the summoning of witnesses the amendment in question had not been presented and allowed. But the fact remains that after the judge allowed the amendment for all pertinent purposes, as stated by him, the petitioners insisted time and again that they be granted leave to present the oral testimony of Luis Ortiz Colón. They made the request, specifically, when the prosecuting attorneys offered the written statement of that witness. There is no question that the so-called amendment to the petition, the scope of which was explained orally, to allow the petitioners to introduce evidence, contained facts which, if true, would prove that their detention was illegal. It may therefore be considered that there was a traverse to the return and, hence, the ground of procedural character

(1941); *Ex parte Oropesa*, 55 P.R.R. 274 (1939); *Tischer* v. *Tischer*, 42 P.R.R. 163 (1931); *Ex parte Colón*, 29 P.R.R. 108 (1921); *Ex parte Alers*, 22 P.R.R. 288 (1915); *People* v. *Pillot*, 19 P.R.R. 250 (1913); *Ex parte Sierra*, 16 P.R.R. 790 (1910); *Ex parte Pinto*, 15 P.R.R. 629 (1909); *Ex parte Álvarez*, 14 P.R.R. 581 (1908); *People* v. *Rivera*, 14 P.R.R. 748 (1908); *Ex parte Thomas*, 12 P.R.R. 350 (1907); *Ex parte Hernández*, 11 P.R.R. 128 (1906); *Ex parte Barbé*, 4 P.R.R. 84 (1903). A similar practice is followed in California. *Ex parte Sternes*, 82 Cal. 245, 23 Pac. 38; *Ex parte Vice*, 89 Pac. 983 (1907); *Ex parte Heacock*, 97 Pac. 77 (1908); *Ex parte Sanders*, 201 Pac. 93 (1921); *Ex parte Baugh*, 164 Pac. 529, 530 (1917); *Ex parte Knudtson*, 79 Pac. 641, 642 (1905); *Eureka County Bank Habeas Corpus Cases*, 126 Pac. 655, 667 (1912); *Ex parte Show*, 113 Pac. 1062, 1066 (1910); *Ex parte Vandiveer*, 88 Pac. 993 (1906).

invoked by the *Fiscal* of this Court is not sufficient to uphold the order which is the subject of this proceeding.

■■ We now turn to consider the merits of the main issue involved, *i. e.*, if at the hearing of the habeas corpus proceeding the petitioners had the right to present the oral testimony of Luis Ortiz Colón, whose sworn statement made in writing before the prosecuting attorneys was the only one which connected the petitioners with the commission of the offense charged, in order to prove with the deponent himself that such statement was false.

It has been noted that in accordance with the provisions of § 480 of the Code of Criminal Procedure (34 L.P.R.A. § 1752), at the hearing of the return of the writ, once the controversy was established by the proper allegations, the court or judge "must proceed in a summary way to hear such proof as may be produced against such imprisonment or detention, or in favor of the same, and to dispose of such party as the justice of the case may require . . . and to do and perform .all other acts and things necessary to a full and fair hearing and determination of the case." However, under this provision the judge or court should not hear or receive evidence for the purpose of determining whether the detained party is guilty or innocent of the offense charged. The innocence or guilt of an accused is a question to be decided within an ordinary trial and not within a habeas corpus proceeding. *Flores* v. *Warden*, 79 P.R.R. 884, 891; *Ex parte Ferrá*, 61 P.R.R. 389; *Ex parte Mercado*, 63 P.R.R. 877; *Molina* v. *Lugo*, 38 P.R.R. 803; *Ex parte Figueroa*, 38 P.R.R. 870; *Ex parte Baigés*, 26 P.R.R. 135; *People* v. *Pillot*, 19 P.R.R. 250; *Ex parte Rosa*, 8 P.R.R. 125. In order to determine the existence of probable cause, which is the question for decision in a proceeding such as this, the sworn statements taken by a prosecuting attorney or judge in the course of a preliminary investigation of the case are admissible in evidence. This has already been decided by

this Court. In *Guadalupe* v. *Bravo, Warden,* 71 P.R.R. 913, we said at p. 917:

"Logically the existence of probable cause seems to be the first question to be considered for, in default thereof, the party detained should be forthwith discharged without consideration of the remaining questions."

And at p. 920–21 we said further:

"The petitioner contends, however, that the practice of admitting affidavits to prove the existence of probable cause in habeas corpus proceedings is erroneous because it is based on laws and decisions of the State of California, where the accused is entitled to be present and to cross-examine the witnesses for the government in the preliminary examination; and that having had that opportunity it is unnecessary to give him that opportunity again when the same affidavits or any of them are subsequently presented in evidence in a habeas corpus proceeding to prove the existence of probable cause for the detention. But the Supreme Court of the United States has held that the preliminary hearing of other jurisdictions forms no part of due process of law. *Lem Woon* v. *Oregon,* 229 U.S. 586 (1913); *Palko* v. *Connecticut,* 302 U.S. 319 (1937). Hence, by receiving in evidence herein the affidavits to prove the existence of probable cause, Vélez Rieckehoff was not deprived of due process of law, for if said affidavits are sufficient to warrant the bringing of an action, without the detained party having had the opportunity to cross-examine the adverse witnesses, they must be sufficient *a fortiori* to establish the probable cause which warrants the denial of habeas corpus, if prima facie said affidavits tend to show the commission of the crime charged. Otherwise, every accused, by filing a petition for habeas corpus, would obtain the preliminary hearing which the statute does not grant him and which, as we have seen, is not an integral part of due process of law."

Therefore, if the purpose of the sworn statements is to prove prima facie the commission of the offense charged, they would be sufficient to establish the existence of probable cause to warrant the denial of habeas corpus. We need not disturb this doctrine in the least.

▅▅▅▅ Yet, the question raised by the appellants is that the sworn statements presented by the prosecuting attorneys are not sufficient to establish the probable cause once the testimony of Luis Ortiz Colón is produced in court, repudiating his entire testimony before the prosecuting attorneys. The sworn statement thus repudiated by deponent Ortiz Colón himself, the principal link of the evidence presented by the prosecuting attorneys to connect the petitioners with the death of Vicenta Ortiz, would be destroyed. Therefore, the possibility that the sworn statement which Ortiz Colón made to the prosecuting attorneys should serve as a reasonable basis for the conviction of the petitioners, no longer exists. This is so because at the corresponding trial of the offense with which the petitioners were charged, the prosecuting attorneys could not use, as direct evidence for the prosecution, the sworn statement made by Ortiz Colón but they had to call Ortiz Colón himself to the witness stand and his testimony, after repudiating his first sworn statement, would not help at all to support The People's case.

In *Ex parte Salvá*, 41 P.R.R. 27, we said that, "Where for the purpose of a conviction an essential link in the chain of evidence is totally destroyed and there is no possibility of such conviction, a writ of habeas corpus will lie." The refusal of the lower court to hear Luis Ortiz Colón's oral testimony prevented the petitioners from showing by uncontrovertible evidence that an essential link in the chain of evidence presented by the prosecution in support of the probable cause had been totally destroyed. The petitioners' detention following the hearing of the habeas corpus, once the sworn statement of Luis Ortiz Colón was excluded after being repudiated by him, was a violation of the constitutional right of the petitioners not to be deprived of their liberty unless there is probable cause supported by oath or affirmation.[4] Under the provisions of § 480 *supra* of the Code of Criminal Procedure, it was the duty of the judge before

---

[4] See § 10 of the Constitution of the Commonwealth of Puerto Rico.

whom the petition for habeas corpus was heard to make a thorough examination of the facts complained of by the petitioners, and, consequently, to admit Luis Ortiz Colón's oral testimony in order to dispose of the matter as the justice of the case might require. This does not mean that in a habeas corpus proceeding evidence is admissible for the purpose of controverting the sworn statements in support of the probable cause, or that it is the court's or judge's duty to settle conflicts in the evidence or to pass upon the credibility of witnesses, for such is solely the province of the jury or the judge sitting in the case. Our holding is that, under the specific facts of this case to which we confine the scope of this opinion, the petitioners had the right to show, by the means offered to the judge, that the only statement which connected them with the commission of an offense ceased to have any incriminating effect, and, consequently, that such statement could not be considered for the purposes of determining the existence of probable cause.[5]

---

[5] While this certiorari proceeding was pending the prosecution filed an information for murder against the petitioners, without including on the back thereof the name of Luis Ortiz Colón as a prosecution witness. Because of that fact alone, the sworn statement made by Luis Ortiz Colón did not lose its juridical efficacy to support the existence of probable cause. The prosecuting attorney is not bound by law to disclose all the evidence which he has in his possession against an accused to support the existence of probable cause in a habeas corpus proceeding. *Ex parte Vilar*, 17 P.R.R. 809. Nor does the law require the prosecuting attorney to include on the back of the information the names of the witnesses whose sworn statements were used in a habeas corpus proceeding to support the existence of probable cause. What the law does require is that a list of the witnesses to be used at the trial against the accused be included on the back of the information. Section 142 of the Code of Criminal Procedure (34 L.P.R.A. § 301). It is obvious that the determination of probable cause made by a judge in a habeas corpus proceeding, such as that made by a magistrate ordering the arrest and detention of an accused, is based exclusively on the evidence before him. Whether the prosecuting attorney uses at the trial all or part of that evidence, is not a question in which the judge making the determination of probable cause may intervene. Therefore, Ortiz Colón's sworn statement lost its juridical efficacy only for the purpose of supporting the probable cause, if it was proved by the oral testimony of the witness himself that such sworn statement was false.

For the reasons stated, we entered the order of April 11, 1958, setting aside the order appealed from and remanding the case for further proceedings.

Mr. Chief Justice Negrón Fernández dissents for the reasons stated in his separate opinion.*